# CHARLESTON.

ROBINSON *v.* VIRGINIA-POCAHONTAS COAL COMPANY.

Submitted March 8, 1916.   Decided April 4, 1916.

1. MASTER AND SERVANT—*Injuries to Servant—Employers Liability Act.*

In all cases where by the terms of the employment the master is required to furnish tools, appliances and machinery for his employee with which to work, it is his positive duty to furnish such

as are reasonably safe and suitable for the purpose, and the servant may assume that the master has performed this duty; but this rule does not apply where the servant makes an improper or unusual use of the appliances furnished him.   (p. 100).

2.  SAME—*Injuries to Servant—Contributory Negligence.*
      An employee cannot recover damages from his employer for an act done by the employee in an unnecessarily dangerous and negligent manner.   (p. 101).

Error to Circuit Court, McDowell County.

Action by D. E. Robinson against the Virginia-Pocahontas Coal Company.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Litz & Harman, J. L. Stafford* and *G. W. Howard,* for plaintiff in error.

*W. B. Kegley* and *Anderson, Strother, Hughes & Curd,* for defendant in error.

MASON, JUDGE:

This is an action of trespass on the case brought by the plaintiff to recover damages for injuries alleged to have been received while engaged as an employe of the defendant in its coal mine.   The accident occurred in May, 1912.   The defendant was then the owner and operator of a coal mine, and used in its mines a mining machine known as the "Goodman Shortwall Machine."   The plaintiff when injured was employed as a machine "helper," in the operation of the machine.   This machine was used to undercut the coal in the mine so that the coal could be shot or dug down by the miners. It was run by an electric driven motor, to which was attached an arm or bar called a cutter bar extending out four or five feet beyond and in front of the body of the machine; to which arm or bar was an endless chain with bits attached, running around the end of the bar and along its outer side and back under the body of the machine.   It was drawn into place in the mine by a rope fastened to a rod called a jack, set up in the room, by winding the rope up over a drum or wheel attached to the machine.   By this means the machine was drawn

up to the face of the coal in position for cutting. After the machine is drawn up to the face of the coal, stationary jacks are placed in the room to hold the machine in position and to attach the rope or cable to, to pull the machine across the face of the coal as the cutting is done. The machine is drawn up near enough to the face of the coal that when the cut is made and as the machine is pulled around toward the side of the room, the cutter bar will extend into the coal the required depth of the cutting. The cutter bar is driven directly and laterally into the coal, and the machine then cuts laterally across the face of the room. Before the machine can do its work, it is necessary to remove the jack, or whatever may be used to hold the bit guard in position, so that the bit guard may slip back under the machine and leave the cutter bar and chain bits in position to do their work. Adjustable jacks are in three pieces, and so made that they can be lengthened or shortened to accommodate the length of the jack to the height of the coal. In moving the machine from place to place, it is the machine helper's duty to take down the jacks, and to remove the jack near the cutter bar when the machine is ready to begin cutting. Another employee has charge of the motor and operation of the machine. In removing one of these jacks, the plaintiff was injured.

The original declaration contained three counts. Defendant demurred, and the demurrer was sustained. The plaintiff filed an amended declaration, containing but one count. This amended declaration alleges that the plaintiff was engaged by the defendant as an assistant or helper in the operation of a coal cutting machine, then used by the defendant in its mine; that it was the duty of the defendant to use all due and proper care and caution to provide and maintain suitable, safe, sound, and secure appliances to be used by the plaintiff in discharge of his duties as such machine helper; that defendant did not observe and regard its duty in this respect, etc.; and then states fully the breach of defendant's duty, and alleges with great particularity the injuries received by the plaintiff, and the damages sustained.

There was a demurrer to this amended declaration, which was overruled. No defects in the amended declaration are

pointed out by counsel, and none are perceived by the court. The defendant pleaded not guilty, and issue was joined thereon. Upon the trial the plaintiff again made some slight amendments to his declaration, to which the defendant objected. The court overruled the objections, and the defendant again pleaded "not guilty," and issue was again joined. The jury returned a verdict for the plaintiff for $5,000.00, which was set aside on motion of the defendant, and a new trial awarded. The plaintiff has brought the case to this court for review.

The defendant assigned as causes for setting aside the verdict, that the court erred in overruling the demurrer to the declaration, and that the court erred in permitting the plaintiff to amend his declaration during the trial. It is clear that the court did not err in any of these particulars. It does not appear in any way that the court erred in permitting improper evidence to go to the jury, or that it refused to admit proper evidence. None are brought to the attention of the court.

Did the court misdirect the jury in favor of the plaintiff by giving the instructions asked for by him, or prejudice defendant by declining to give to the jury instructions tendered by it?

The following instructions were given on behalf of the plaintiff:

"Plaintiff's Instruction No. 1. The court instructs the jury that it is the duty of the master, not only to use ordinary care to furnish his servant reasonably safe and suitable machinery and appliances with which to work in the first instance, but that it is his further duty to exercise a like degree of care to keep and maintain such machinery and appliances reasonably safe and suitable for the purposes for which they are intended, and to this end use a like degree of care to make such inspection from time to time as will reasonably keep him informed as to their condition, and that the master is chargeable with knowledge of the facts which such inspection would have disclosed.

"Plaintiff's Instruction No. 2. The court instructs the jury that a master is liable for an injury to a servant prox-

imately caused by the concurrent or combined negligence of the master and another servant to whom the injured party sustained the relation of fellow servant.

"Plaintiff's Instruction No. 3. The court instructs the jury that the plaintiff, D. E. Robinson, had a right to presume that the defendant company would use ordinary care to furnish him reasonably safe appliances with which to perform his work, and that to charge the plaintiff with knowledge of a defect in the pipe jack, if the jury shall believe there was such a defect, and that it was due to the failure of the defendant company to exercise the care aforesaid, such defect must have been unquestionably plain and obvious to the plaintiff, so that if he did not see it he must necessarily have been at fault, and that there was no duty imposed upon the plaintiff to make a critical examination of the pipe jack before attempting to remove it from the cutting machine.

"Plaintiff's Instruction No. 4. The court instructs the jury that if they believe from the evidence in this case that the plaintiff is entitled to recover, then it will be their duty to award him such damages as will be a fair and just compensation for the injury sustained, not to exceed ten thousand dollars; and the court further instructs the jury that in assessing damages it is proper for them to take into consideration the extent of the injuries suffered, the bodily pain and suffering and mental anguish endured by him, or that necessarily in the future must be endured by him, as a result of the injury, and any disfigurement to the person and any injury to the health that has occurred or must necessarily occur as a result of the injury."

Counsel for appellant do not press in argument any special objection to any of these exceptions, and counsel for the appellee in their brief call attention to only three instructions given for plaintiff to which they object, and one which was asked for by the defendant and refused. As the questions arising under the ruling of the court in relation to these instructions will be hereafter referred to, we will not discuss them at length here. Instruction No. 1 given at the instance of the plaintiff is excepted to. This instruction when read in connection with the defendant's instruction No. 7,

correctly propounds the law of this case. Plaintiff's Instruction No. 2 is good as an abstract proposition of law. Whether or not it should have been given in this case under the evidence depends upon whether or not the defendant was guilty of negligence in not supplying the plaintiff with proper appliances with which to work, which will be hereafter discussed. Plaintiff's Instruction No. 3 is good when read in connection with defendant's Instruction No. 2. The defendant's Instruction No. 4 was unnecessary, because it contains only instructions embraced in its Instructions Nos. 3 and 8; that is to say Nos. 3 and 8 cover all that is embraced in No. 4.

Did the court err in setting aside the verdict of the jury and awarding a new trial? The answer to this question depends wholly upon whether or not the evidence was sufficient to support it.

That the plaintiff was very seriously injured while employed in the defendant's coal mine, is conceded; but was the injury caused by the negligence of the defendant? The burden is on the plaintiff to prove that some negligent act of the defendant was the proximate cause of the injury. As we have already seen, the plaintiff at the time he was injured was employed as a helper in operating a mining machine. He had placed, as was his duty to do, a "jack" at the front end of the machine, while the machine was being placed in position, and was attempting to remove this jack preparatory to starting the machine. In doing this he was in the performance of his duty. The jack had to be removed before the machine began to work, and it was his duty to remove it. He took hold of the jack for the purpose of removing it, and as he did so one end of it was caught in the machinery and the jack was thrown violently against his head, injuring him. The machinery was in operation when the jack was caught; but whether the machinery was started at the moment he took hold of the jack, or was in motion before that time, is disputed. The plaintiff says the machinery was started just as he took hold of the jack; the man who was running the machine says that the machinery was in operation when the plaintiff undertook to remove the jack. The evidence is conclusive that the jack should have been removed before the

machinery began its work of cutting, and all say it would be dangerous to remove the jack while the machinery was in motion.

The allegation of the declaration is that the jack was defective, and that this defect was the cause of the accident. The only charge of negligence on the part of the defendant complained of was in furnishing the plaintiff with an insecure, unsafe, defective, and unsound appliance, called an adjustable jack, with which to work. The plaintiff alleges that the defendant knowingly permitted said jack to become insecure, unsafe, unsound, and unsuitable for the purpose for which it was intended, and that without any knowledge of the defects of the jack, he used it in discharge of his duties, and that the jack came in contact with the bits of the machine, which were then in motion, and that the jack was violently cast against the plaintiff, striking him on the side of his face and head, and produced the injuries complained of. The plaintiff says that when he took hold of the jack that it came apart, and one end came in contact with the machine, etc. The defendant offered proof to show that the jack was not an adjustable jack, but a jack consisting of one piece only. It was in evidence that the two kinds of jacks were in use in the mine at this time, but the evidence as to what kind the plaintiff was using at the time he was injured is contradictory. These were questions for the jury. The evidence is clear that it was dangerous to remove the jack while the machine was in motion; and that the accident might have happened even if the jack had not been defective. This introduces an element of uncertainty. If the accident could not have happened while the plaintiff was removing a perfect jack, then we should conclude that the jack in use was defective and caused the accident. But suppose the jack was defective and that such defect caused the accident, was this such a defective appliance as the defendant could reasonably be required to provide against? It was not to be removed while the machine was in motion, and there was no danger in removing it when the machine was not in motion, even if it came apart.

The jack, while not attached to the machine, was an appli-

ance to be used in connection with it, and it was the duty of the defendant to furnish a reasonably safe jack to be used with the machine for the purpose for which it was intended. But if the jack was defective, and the plaintiff had been injured while using it in some manner for which it was not intended, there would be no liability on the defendant. The defendant did not anticipate that the plaintiff would use the jack in any other manner than that for which it was furnished to him. The cause of the injury was the attempt to remove the jack while the machine was in motion, and it was no part of the duty of the plaintiff to so use the jack. But it is charged that the machine was started by the person in charge of the motor without directions from the plaintiff. The operator of the machine was a fellow servant of the plaintiff, and defendant is not liable to the plaintiff for injuries caused by the negligence of a fellow servant. But it is insisted by counsel for plaintiff that if the person operating the machine was guilty of negligence in starting the machine, and the defendant was guilty of negligence in providing a defective jack, and the injury was caused by both, the defendant would be liable, the negligence being concurrent. The falacy of this argument consists in assuming that the accident would not have occurred but for the defective jack. The evidence does not justify this assumption. Before we could hold the defendant liable on this theory, it would have to be proven that the defendant was negligent in not having provided a jack safe and suitable for the purpose for which it was to be used, and that the defective jack was the cause of the accident.

It is true that in all cases where by the terms of the employment the master is required to furnish tools, appliances, and machinery for the use of his employees in the discharge of their duties, it is the positive duty of the master, under the law, to furnish such as are reasonably safe and suitable for the purpose, and the servant may assume that the master has performed that duty; but this rule does not apply where the servant makes an improper and unusual use of such appliances furnished him. 26 Cyc. 1100 and 1101. It is the duty of the employee to use such machinery and appliances in the manner and for the purposes intended by the master, and not

otherwise. In the case at bar there is no dispute as to the use that was to be made of the jack in question, nor is its being sufficiently and reasonably safe for that purpose questioned, nor is it claimed that the mining machinery was not in good condition. The plaintiff was familiar with the mechanism and use of the machine, and the proper method of removing the jack, and knew that it was dangerous to remove the jack while the machine was in motion. Under these circumstances it is clear that the defendant had discharged all its duties.

The proximate cause of the injury was the attempt to remove the jack while the machinery was in motion, and not the condition of the jack. The doctrine that negligence may be inferred, as a matter of law, when it is apparent that the act which caused the injury was done in an unnecessarily dangerous manner, has been applied in many cases of this character. We refer to 3 Labatt's Master and Servant, sec. 1254 et seq. In such cases there is no liability on the master. "The proximate cause of an injury is the last negligent act contributing thereto, and without which such injury would not have resulted." *Schwartz* v. *Shull*, 45 W. Va. 405.

The circuit court did not err in setting aside the verdict and awarding a new trial. The judgment will be affirmed.

*Affirmed.*