# CHARLESTON.

BENJAMIN L. PERKINS v. MONONGAHELA VALLEY TRACTION CO.

Submitted February 19, 1918.  Decided March 5, 1918.

1. DAMAGES—*Physical Examination—Discretion of Trial Court.*
   It is not an abuse of discretion to refuse to require the plaintiff in a suit to recover damages for personal injuries to submit to a physical examination, to be conducted by physicians selected by the defendant, where it appears that the plaintiff has submitted to one such examination, and upon demand being made for a second one. expressed his willingness to submit thereto at the trial.; if indeed the court has the power to require such examination in any case.  (p. 783).

2. CARRIERS—*Passengers—Care Required.*
   Carriers of passengers in the execution of their contracts of carriage are charged with the exercise of the highest degree of care and diligence of which human skill and foresight is capable.  (p. 786).

3. DAMAGES—*Personal Injury—Special Damages—Pleading.*
   One suffering an injury from the unlawful act or negligence of another is entitled to recover all of the damages resulting from such negligence, even though, because of his enfeebled condition, the injury to him is much more severe than would have been sustained by one in good health. The damages in such case are not special in the sense that the injured party in his pleading must aver his weakened physical condition, and the more serious effect of the accident upon him because thereof.  (p. 786).

4.  EVIDENCE—*Expert Testimony—Hypothetical Facts—Basis of Opinion.*

It is not improper to permit an expert witness to give an opinion based partly upon an hypothetical state of facts contained in the question asked him, and partly upon his knowledge of the subject of such opinion, where it appears that before being asked therefor he has fully informed the jury as to the character and extent of his knowledge of the subject upon which his opinion is asked. (p. 790).

5.  TRIAL—*Admission of Evidence—General Objection.*

Evidence that is competent for any purpose is properly admitted over a general objection thereto. (p. 790).

Error to Circuit Court, Harrison County.

Action by Benjamin L. Perkins against the Monongahela Valley Traction Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*George M. Alexander, Tusca Morris, Osman E. Swartz, E. Byran Templeman,* and *Chas. G. Coffman,* for plaintiff in error.

*Smith & Jackson,* and *Ireland & Perkins,* for defendant in error.

RITZ, JUDGE:

Plaintiff was a passenger on a car of the defendant company from Fairmont to Clarksburg. When the car arrived at Clarksburg it was dusk. This coach was not hauled up to the platform where passengers are ordinarily discharged, but stopped with one end of it extendeng over a trestle. The station was called by the conductor and the plaintiff got up from the brightly-lighted car, walked out upon the platform, and being unable, because of the fact that he came out of a brightly-lighted car into the dark, to see that the car was extending over the trestle, stepped off the car upon the trestle, his right leg going through between the ties, he alighting upon the base of his spinal column and the pelvic region. Some superficial injury resulted to his right leg, but the principal injury of which he complains is that which he claims was produced by the shock to his spinal column. The defendant does

not now, and could not very well, in the light of the evidence, contend that it was not guilty of negligence in its conduct toward the plaintiff on the occasion of his injury, but it insists that the injuries for which the plaintiff recovered damages did not result from the accident to him on that occasion, but were the effect of a pre-existing disease.

The defendant's first contention is that the court below erred in refusing its motion to require the plaintiff to submit to a physical examination, to be conducted by physicians selected by the defendant and approved by the court. A few days before the calling of this case for trial the defendant made a motion in the court below to require the plaintiff to submit to a physical examination, to be conducted by physicians of its selection, to be approved by the court, but the court after hearing this motion refused the same. Was this error under the circumstances shown to exist in this case? The accident to the plaintiff occurred on the 30th day of November, 1913. His contention is that his physical condition has continued to grow worse ever since that time. There was some negotiation between the parties looking to a settlement of plaintiff's claim for the injuries received, and in the fall of 1914, at the request of the defendant, the plaintiff submitted himself for a physical examination by a physician designated by the defendant. This examination was conducted in the office of the plaintiff's physician and was as full and complete as the defendant's physician desired. No settlement resulted, and this suit was thereafter brought. A short time before the case was set for trial plaintiff, fearing that he would be unable to attend the trial because of his debilitated condition, took his own deposition to be read as evidence upon the trial in case he should be unable to attend. At this time he was examined as to the nature and cause of his illness, and testified that he could not speak as to the causes of the trouble, but that certain physicians who had been attending him would testify at the trial in regard thereto. The defendant company thereupon asked him if he was willing to submit to a further physical examination by physicians of its selection, and he replied that he would not submit to any further examination by the defendant's physicians in advance of the trial; that it secured a continuance of his case at a former term of

the court on the ground of the absence of its physician who
had theretofore examined him, and he did not care to be a
party to making more witnesses for fear the result would be
another continuance of the case; but that if the defendant de-
sired to have him examined further he would submit to such
examination at the trial. The plaintiff was present at the trial
of the case and was examined as a witness, and no request
was made by the defendant company to have him examined by
any physician of its selection. The right to have a physical
examination of a plaintiff in an action to recover damages for
personal injury, if such right exists, and upon this we ex-
press no opinion, can certainly only be reasonably exercised.
The authorities upon the question of the existence of the
right are irreconcilably in conflict. See *City of South Bend*
v. *Turner,* 156 Ind. 418, 54 L. R. A. 396; *Atchison, Topeka
& Santa Fe Ry. Co.* v. *Palmore* (Kan.) 64 L. R. A. 90; *Austin
& Northwestern R. R. Co.* v. *Cluck* (Tex.) 64 L. R. A. 494;
*Western Glass Mfg. Co.* v. *Schoeninger,* 15 L. R. A. (N. S.)
663. The monographic notes appended to the reports of the
above cases contain exhaustive citations of the authorities on
both sides of this question. An examination of these authori-
ties leads to the conclusion that even in those jurisdictions
where the right to have such physical examination is recog-
nized, it is granted or withheld by the court in the exercise of
a sound judicial discretion. *Williams* v. *Chattanooga Iron
Works,* 131 Tenn. 683; Wigmore on Evidence, § 2220; Thomp-
son on Trials, § 859; Jones on Evidence, §§ 396 & 397;
Black's Law & Practice in Accident Cases, § 208; Chamber-
layne on the Modern Law of Evidence, § 3597. These text
writers cite the authorities supporting the various positions
taken in the text, and there seems to be no dissent from the
view that where the court to which such a motion is made, in
the exercise of a sound discretion, refuses such examination
its action will not be reversed. The things to be considered
by the court in passing upon such a motion are the conven-
ience of the plaintiff, the necessity for the physical examina-
tion, that is, the probability that it will produce evidence of
value in the trial of the case, and also whether or not the
plaintiff has declined to submit to such reasonable examina-

tion.   In no case have the courts required the submission to
a physical examination which would result in serious incon-
venience to the plaintiff, or would involve a surgical operation,
and ordinarily the plaintiff in such case is allowed the privi-
lege of having such examination conducted at such time and
place as he desires, in case he makes a reasonable selection
thereof.   In this case, plaintiff without objection submitted to
a physical examination by a physician selected by the de-
fendant for that purpose.   This examination was carried on
to the fullest extent requested or desired by such physician,
and it might well be said that the defendant could not com-
pel the plaintiff to submit to any further inconvenience in
that regard.   Surely the plaintiff could not be required to
submit to successive examinations until the defendant had se-
cured expert witnesses who would testify in support of its
theory of the case.   The purposes of such physical examina-
tion in those jurisdictions where it is allowed is not to secure
evidence to defeat the plaintiff's case, but is for the purpose
of exposing the true situation, and should such examination
result in opinions upon the part of the examining physicians
adverse to the defendant, he should not be allowed to have
another examination with the hope of securing opinions from
other experts favorable to him.   When the plaintiff permits
voluntarily such examination the defendant should then se-
lect the experts it desires to make it, and should not be al-
lowed to embarrass or inconvenience the plaintiff by unneces-
sary repetition of such request.   Here, however, upon a sec-
ond demand being made upon him, the plaintiff again ex-
pressed his willingness to submit to such examination as de-
fendant desired its physicians to make of his person at the
trial of the case, and gave as his reason for declining to sub-
mit to it at any other time the fact that it had procured a con-
tinuance of his case because of the absence of the physician
who examined him on a former occasion, and his fear that it
would procure another continuance because of the absence of
other physicians it might select for the purpose.   Aside from
the reasons given by the plaintiff for his refusal to submit
at any other time than on the trial, we think this was a reason-
able designation of a time and place by the plaintiff for the

purpose. It is true ordinarily such examinations are made in private, but this is because of the embarrassment that it might cause the plaintiff to submit to a public exposure of his person. If he prefers to have the examination made even in the presence of the jury, the defendant cannot object, and certainly the testimony of the experts would be very much more enlightening under such circumstances than it would be where the object being examined was not physically presented to the jury along with the expert testimony. Even if we concede the right of the defendant to have such a physical examination in a proper case, which question we do not now pass upon, we are clearly of the opinion that the defendant did not present such a case to the court on this occasion, and that there was no abuse of the discretion by the trial court in refusing the defendant's motion.

Complaint is made of the giving of plaintiff's instruction No. one. The objection to this instruction is that it requires too high a degree of care from the defendant. It tells the jury that if the defendant company failed to exercise the utmost care, or was guilty of the slightest negligence against which human prudence and foresight might have guarded, and injury resulted to the plaintiff by reason thereof, it was liable in damages. It is true this rule imposes upon carriers of passengers a very heavy burden. They are not insurers against accident or injury to passengers while in their charge, but they are under obligation to do everything which human diligence and foresight would dictate to secure the safety of such passengers. *Mannon* v. *Ry. Co.*, 56 W. Va. 554; *Kennedy* v. *Ry. Co.*, 68 W. Va. 589. This salutary rule has for its purpose the protection of human life, and we do not feel that the establishment of a more liberal one would be consistent with the high regard for human life which the courts of this country have always entertained.

Criticism is made of plaintiff's instruction No. two. This instruction attempted to afford the jury a proper measure for the assessment of damages in case they found the plaintiff was entitled to recover. It is as follows: "The Court instructs the jury that if they find for the plaintiff, they are, in estimating the damages, at liberty to consider the health, con-

dition and earning capacity of the plaintiff before the injury, as compared with the present condition; also whether said injury was permanent in its nature, and how far it is calculated to disable the plaintiff from engaging in those pursuits and occupations for which, in the absence of said injury, he would have been qualified; also the physical suffering to which he was subjected by reason of said injury; also any 'losses' that may occur in the future to the plaintiff, provided they are such as the jury believe from the evidence will actually result to the plaintiff as the proximate damages of the wrongful act complained of; also all necessary and legitimate expenses incurred by the plaintiff because of said injury; and to allow such damages as, in the opinion of the jury will be a fair and just pecuniary compensation for the injury which the plaintiff has sustained.'' One objection made to this instruction is that it tells the jury that it may find, in addition to damages for the injury already sustained, such losses as may occur in the future, provided they are such as the jury believes from the evidence will actually result to the plaintiff as proximate damages from the wrongful act. It is claimed that by the use of this word proximate in the instruction there was submitted to the jury a question of law; that the court should determine what are proximate damages, and should have told the jury in language which would not require the settlement by the jury of any legal principle. We do not think this criticism is sound. The word proximate is a common English term, and its meaning ordinarily well understood, and if the defendant was afraid that the jury might have an incorrect view of what was meant by the use of the words proximate damages it could easily have requested the court to give to the jury its views in that regard. This instruction is also criticised because it is said that it allows the jury to award damages on account of the plaintiff's present condition, excluding the defendant's theory that this condition may have been produced by causes other than the accident. This criticism, it seems to us, is rather specious. The instruction in all of its clauses very carefully limits the recovery which it authorizes to damages sustained by the plaintiff from the injury received by him on the occasion of the

accident. There is no language which would allow the jury to compensate the plaintiff for any injury that was not the direct result of the accident complained of. Read in connection with instructions given on behalf of the defendant, it is clear that the jury could not have misunderstood the direction given by the court.

Plaintiff's instruction No. three is the subject of criticism. The effect of this instruction is to advise the jury that even though it believes that the plaintiff was afflicted with a latent disease at the time of the injury, from which he had a predisposition to some of the troubles from which he is now suffering, but was otherwise in good health, and the injuries received by him at the time of the accident developed the said disease and predisposition, without the fault of the plaintiff, and such injuries were the result of defendant's negligence, then the defendant is liable for such condition so produced by the injuries received. The criticism made of this instruction is that there is neither pleading nor evidence upon which to base it, and that it permits the jury to assess damages in favor of the plaintiff on account of his present condition from whatever cause that condition may have resulted. The plaintiff's contention in this case is that he was not suffering from any disease at the time of the injury, and that all of his troubles since the injury were the result thereof. This theory of a pre-existing disease which may have caused the trouble was introduced into the case by the defendant, and it was to meet the same that this instruction was given. If the jury believed the plaintiff's theory of the case, there was no question of any injurious effects from a diseased condition existing prior to the time of the accident, and it is hard to conceive under what rule of pleading the plaintiff would be required to plead in avoidance of every defense which might be made to his suit. It may be that if the plaintiff was setting up an injury received by him which accelerated or caused a predisposition which he possessed to develop and give him trouble, he would have to plead the same, but surely where the matter is introduced by the defendant it is not necessary, in order for the plaintiff to introduce evidence to meet this defense, that he shall amend his declaration and plead the

evidence which would justify the belief that his injuries were the result of the accident, notwithstanding he was afflicted with a disease which might predispose him to some of the infirmities from which he suffers. *Sloane v. Southern California Ry. Co.*, (Cal.) 44 Pac. 320; *Campbell v. Los Angeles Traction Co.*, (Cal.) .70 Pac. 624; *Kincaid v. Pearl Steam Laundry Company*, 189 S. W. 1189; *Murphy v. Southern Pac. Co.*, 101 Pac. 323; *N. & W. Ry. Co. v. Spears*, 65 S. E. 482; *Larson v. Boston Elevated Ry. Co.*, 98 N. E. 1048. The criticism that this instruction permitted the jury to assess damages in favor of the plaintiff because of his present condition, regardless of what produced such condition, is not well founded. The instruction carefully limits any recovery to damages which resulted from the injuries received by the plaintiff at the time of the accident. As before stated, the basis upon which this instruction rests was introduced into the case by the defendant in its attempt to show that the plaintiff's condition resulted from a disease with which he was afflicted before the accident, and not from the injuries received by him at that time. The expert witnesses who testified on behalf of the defendant gave it as their opinion that the deplorable condition of the defendant was due to such cause.. The expert witnesses who testified on behalf of the plaintiff are just as emphatic that his condition resulted from the injury, whether he was free from or afflicted with disease before the injury. From this it appears that there was ample evidence in the case from which the jury could find that the plaintiff was afflicted with the disease claimed by the defendant's experts, and still that such disease would never have produced his present condition but for the injuries received by him due to the defendant's negligence.

The defendant also objects that the plaintiff was permitted to ask his witness Dr. C. M. Kessler with whom of the traction company he had talked about the case since he had treated the plaintiff at the time of the injury. This witness, it is shown, was called to attend the plaintiff on the night he received the injury complained of, and he was called to testify to the conditions that he found at that time. In his testimony he stated that the only injured condition he found was the

abrasions on the plaintiff's right leg, and that all the treatment he administered was for these abrasions. He further testified that the plaintiff made no complaint of any other injury at that time. The plaintiff was evidently surprised by this answer, and the witness was asked the question with whom of the traction company people he had talked since he had treated the plaintiff. the inference being that some influence had been brought to bear inimical to the plaintiff. The witness's answer, however, shows that the only conversation he had with any of the traction company people was one in which he informed them that he would be of no service as a witness to that company. It may be said that ordinarily a party introducing a witness will not be allowed to impeach such witness by proving that he is of general bad reputation, or that he has made contradictory statements, but where, as in this case, the question asked and the answer thereto fall far short of impeachment, it amounts simply to the introduction of irrelevant matter, which is not cause for reversal where we can see, as we can here; that no injury could result therefrom.

The action of the trial court in permitting Drs. DePue, Rose and Frame to give their opinions in answer to certain questions, based partly upon hypotheses, and partly upon their own knowledge, is assigned as error. These questions, after stating to the witnesses the facts in regard to the plaintiff's fall on the occasion on which he was injured, asked the witnesses to give their opinion as to the cause of plaintiff's present physical condition, taking into consideration those facts and the knowledge they had of him acquired previous to his injury, as well as from their treatment of him subsequent to the injury. It is objected that the witnesses were permitted to take into consideration matters of which the jury had not been informed. It is quite true that a hypothetical question must be based upon facts which have been detailed to the jury, and not upon something outside of the case, and if it can be said that these questions would permit these witnesses in making their answers to consider matters of which the jury was not advised, then they were improper. An inspection of the record, however, discloses that before the ques-

tions were propounded to each of the witnesses they had detailed fully and with great circumstantiality their knowledge of and acquaintance with the plaintiff. In other words, when these witnesses gave their opinions the jury knew that they were testifying upon the previous knowledge they had of the plaintiff as detailed by them to the jury, as well as upon the hypothetical state of facts set up in the question. The authority cited by the plaintiff in error, *Raub* v. *Carpenter*, 187 U. S. 159, does not condemn the questions asked here. In that case the expert witness was testifying in regard to the mental condition of his uncle. He had told the jury some of the things that he had seen his uncle do on a few occasions, and had told the jury the result of an autopsy held on the body of his uncle. The question was then asked him whether he had formed any opinion from his uncle's condition of health, or the condition of his brain disclosed by the autopsy, and from all he knew about him himself, what his condition of mind was. It is clear in that case that the witness testifying did not attempt to fully inform the jury as to all the knowledge he had of his uncle. He was a close relative, his relations with him, no doubt, extended over a great length of time, and likely were many and intimate, so that it can readily be seen that he should have been limited in giving his opinion to the facts which he had detailed to the jury. In this case it sufficiently appears from the evidence of these expert witnesses that they had all fully informed the jury as to the knowledge upon which they based their answers to the questions. In the case of *Bowen* v. *The City of Huntington*, 35 W. Va. 682, cited and relied on by the defendant, it did not appear that the expert giving his opinion had disclosed all of the facts upon which it was based, and for that reason the question asked was condemned. We see no reason for requiring, in propounding a question to an expert, the recital of all the facts already detailed by the expert upon which his opinion is desired. If it clearly appears that the opinion given by him is based upon the statements he has already made, together with the hypotheses submitted with the question, then there is no encroachment upon the right of the jury. The jury is as fully informed of the basis of the witness's

opinion as if all of such testimony were recited in the question propounded.

The action of the court in permitting the plaintiff's mother to testify that she had never observed any pimples or sores upon the plaintiff is objected to. The expert evidence shows that the disease from which the defendant contends the plaintiff was suffering sometimes made sores or pimples upon the body of the party affected. Certainly evidence tending to show that there were no such marks upon the plaintiff would be proper. It is true it is entirely negative in its nature. It only shows that the plaintiff did not have one of the symptoms which sometimes accompanies the disease. This, however, does not go to the admissibility of the evidence, but only to its weight.

The action of the court in permitting the witness A. D. Ireland to testify in rebuttal that Dr. Durett, the physician sent to Parkersburg to examine the plaintiff, stated to him after the examination to send in the bill, meaning the claim for damages sustained by the plaintiff, and the company would pay it, is condemned. Dr. Durett testified as a witness for the defendant in this case, and the effect of his testimony is that none of the troubles with which the plaintiff suffers resulted from the accident, but that all of them are the result of the disease with which the defendant contends the plaintiff is afflicted. He testifies that he bases this testimony upon the conditions which he found at the time of the examination. The statement which Ireland testifies he made on that occasion would have a tendency to contradict the evidence given by him upon the trial of the case. If, as he now states, all of these troubles were attributable solely to some other cause, why would he advise sending in a bill for the defendant company to pay? This statement is consistent, and consistent only, with the view that the defendant company was responsible for the condition which he found at the time of his examination, and is in direct conflict with the testimony given by him at the time of the trial. Of course the evidence was proper for no other purpose but that of contradiction.

The action of the court in admitting in evidence two photographs taken of the plaintiff's back is assigned as error. The

photographer who took these photographs was introduced as a witness and testified that they were photographs of the plaintiff's back taken by him and correctly represented the same. They were introduced for the purpose, no doubt, of showing that upon the plaintiff's back, at the point where it is claimed the injury affects the spine, there was a slight tumor upon the outside. It is difficult to see what objection there could be to the introduction of these photographs. All of the doctors who examined the plaintiff testify to the existence of this tumor, including Dr. Durett who examined him for the defendant, and if the defendant had any doubt as to the existence thereof it could have taken advantage of the plaintiff's offer, and had an examination of the plaintiff's person at the trial for the purpose of determining whether or not these photographs were or were not correct representations of actual conditions.

It is also contended that the evidence did not justify the conclusion evidently reached by the jury that plaintiff's condition was the result of the injuries received by him at the time of the accident. The evidence upon the question as to what caused the plaintiff's condition consists largely of the opinions of the expert witnesses based upon their examinations of him. It appears from their testimony that they made many examinations of the plaintiff under varying conditions, and the plaintiff's experts testify that in their judgment the troubles with which the plaintiff is afflicted resulted from the injury occasioned by the fall of the plaintiff on the occasion above referred to. They state from their examination that it is their opinion that the plaintiff's spinal cord or the nerves in the spinal cavity are being pressed either by a tumorous growth in the spinal canal, or else by a slight dislocation of one of the vertebrae, and that this pressure upon the spinal column or the nerves causes all of plaintiff's troubles. The defendant's experts, on the other hand, testify that no such condition as the plaintiff's experts testify exists, could have come from the fall received by the plaintiff. It was a question for the jury to determine upon the whole evidence what did produce the present deplorable condition of the plaintiff's health. It is conceded by all parties that his injuries

are permanent, that his physical condition will continue to grow worse as time passes, and no complaint is made that the verdict is excessive if the defendant's negligence is responsible for the plaintiff's condition. The finding upon this question, it is. true, depends largely upon expert testimony. The only testimony aside from this which the jury had upon which to base a finding was the fact, as testified to by the plaintiff and some of his asquaintances, that he was in good health and in robust physical condition immediately before the accident, and that immediately thereafter he went into a physical decline, which has continued ever since. Of course, those witnesses do no undertake to attribute this decline to the injury, and it is related to the injury, so far as their evidence is concerned, only in that it began immediately thereafter. Its causal connection therewith is fixed by the testimony of the experts. While evidence of experts is always of an uncertain and inconclusive nature, there are many cases in which it affords the only basis for the establishment of facts necessary to be shown in order to the vindication of substantial rights, and in such cases all the courts can do is to determine the rights of litigant parties by the application of legal principles to the facts as the same are found to exist by the jury before whom the case is tried, and who are under the necessity of making a finding of fact, even though the evidence may not be of that certain and conclusive nature which is always to be desired when the same is available. We cannot see in this case that the jury's finding is not supported by the evidence introduced, and that the defendant has been prejudiced thereby. The issue of human affairs is always uncertain, and particularly is that true in cases like the present. When, however, the jury has made a finding of fact based upon the best evidence available, it does not lie with the courts to disturb that finding.

We find no error in the judgment complained of and the same is affirmed.

*Affirmed.*