297 S.E.2d 433

**William FLANNERY, Committee, etc.**

v.

**UNITED STATES of America.**

**No. CC928.**

Supreme Court of Appeals of West Virginia.

Oct. 28, 1982.

**28**

Ray L. Hampton, II, Barrett, Chafin, Lowry & Hampton, Huntington, for plaintiff.

Marc Johnston, Anthony J. Steinmeyer, Civ. Div., Dept. of Justice, Washington, D.C., for defendant.

Donald R. Wilson, Stanley E. Preiser, Fanny L. Haslebacher, E. Dixon Ericson, Preiser & Wilson, John L. McClaugherty, Robert G. McLusky, Jackson, Kelly, Holt & O'Farrell, Charleston, for amicus curiae.

MILLER, Chief Justice:

In this case from the United States Fourth Circuit Court of Appeals we are asked to determine two certified questions. The first is whether under our State damage law a plaintiff in a personal injury action who has been rendered permanently semi-comatose is entitled to recover for the impairment of his capacity to enjoy life. The second question is whether the trial court, when sitting as the finder of facts in a personal injury action, can deduct from the plaintiff's award for lost earning capacity an amount equal to the federal income taxes which would have been levied upon such income had it actually been earned.[1] We answer the first question in the affirmative and the second in the negative.

This case was initially tried without a jury before the Honorable Charles H. Haden, II, Judge of the United States District Court for the Southern District of West Virginia, who made this summary of the plaintiff's condition in his memorandum opinion and order dated January 22, 1980:

> "Flannery was approximately 22 years of age at the time of the accident. He was hospitalized in Cabell-Huntington Hospital from October 28, 1974, through April 12, 1975, and in Appalachian Regional Hospital from that date through April 22, 1975. Subsequent to his hospitalization he has remained in a semi-comatose condition that is not likely to improve. Flannery has a projected life expectancy of thirty years (as measured from 1978), provided he continues to receive good nursing care. Testimony was that he is less likely to live out his full

---

1. We have slightly paraphrased the text of the certified questions as they are contained in *Flannery v. United States,* 649 F.2d 270 (4th Cir.1981). The certification is made pursuant to W.Va.Code, 51–1A–3. *See Abrams v. West Virginia Racing Commission,* 164 W.Va. 315, 263 S.E.2d 103 (1980); *Morningstar v. Black & Decker Mfg. Co., Inc.,* 162 W.Va. 857, 253 S.E.2d 666 (1979).

life than a normal healthy person because of his reduced resistance to various diseases and medical conditions, such as pneumonia and urinary tract infections. It is unlikely that Flannery will need sophisticated medical treatment, rather he will require constant nursing and custodial care combined with occasional medical oversight. Flannery's parents are capable of providing custodial nursing care and have chosen to provide the care that their son needs in their home. They have provided such care since April, 1975, and intend to do so as long as they are able."

Judge Haden awarded the following elements of damages in his memorandum opinion and order: For hospital, medical and nursing expenses incurred prior to the trial, $48,174.80; for future nursing expenses based on a thirty-year life expectancy, $316,984.00; for impairment of earning capacity, including both wages and fringe benefits, $535,855.00; and, for loss of ability to enjoy life, $1,300,000.00, thus, making a total damage award of $2,201,013.80. The court did not award any amount for pain and suffering,[2] nor did it make any award for permanent disability.

## I.

The law of damages for personal injuries in this State, as is probably true elsewhere, has evolved from individual cases without a great deal of theoretical cohesion. It basically reflects the rather obvious fact that injuries to the person both physical and mental can occur in an almost infinite variety of patterns.

The basic goal in awarding damages is to fairly and adequately compensate the plaintiff for the injuries and losses sustained. In general we have recognized that compensatory damages for personal injuries are composed of two broad categories. First there are those damages which are termed "liquidated" or "pecuniary" in the sense that they represent some form of expense or economic loss that can be rendered reasonably certain monetarily by a mathematical figure or calculation. These include medical, hospital, nursing, dental, drug and all other similar expenses, both present and future that are incurred in treating, curing and alleviating the plaintiff's physical and mental injuries. Also included in this category are lost wages and lost earning capacity.

The second category consists of intangible damages since they are "unliquidated" in the sense that there is no precise monetary calculation that can be used to determine the amount of the loss. The most obvious of these is pain and suffering. Another element of unliquidated damages arises from the plaintiff's permanent injuries. The term "permanent injury" is used as a threshold condition that must ordinarily be shown in order to recover any future damages [3] surrounding a personal injury as we said in Syllabus Point 9 of *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974):

"The permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to

---

**2.** The court's remarks on this point are contained in its memorandum and order of January 22, 1980, p. 9:

"It is totally speculative whether or not Mr. Flannery can in fact experience any pain or suffering, or pleasure, of anything whatsoever. Conversely, it is clear to this Court that the Plaintiff has been deprived, wholly, of the capacity to enjoy life. The rule in *Nees v. Julian Goldman Stores, Inc.*, [109 W.Va. 329, 154 S.E. 769 (1930)] stated in the disjunctive and allowing recovery for pain and suffering or loss of the capacity to enjoy life, is tailored to provide for an unfortunate case such as this."

The court further stated in note 5:
"The Plaintiff is not sentient and thus, under West Virginia law, pain and suffering are not capable of proof. Under *Nees v. Julian Goldman Stores, Inc.*, however, this very fact establishes Plaintiff's right to recover for his nonsentient condition, for his loss of the ability to enjoy life."

**3.** The two broad categories of personal injury damages, liquidated and unliquidated, can also be subdivided as to those damages which have presently accrued at the time of the trial and as to those which will necessarily be incurred in the future.

award an injured party future damages." [4]

Once a permanent injury is established, then the following elements of future damages can be considered as outlined in Syllabus Point 10 of *Jordan, supra:*

> "Future damages are those sums awarded to an injured party for, among other things: (1) Residuals or future effects of an injury which have reduced the capability of an individual to function as a whole man; (2) future pain and suffering; (3) loss or impairment of earning capacity; and (4) future medical expenses."

It is apparent from *Jordan* that the "[r]esiduals or those future effects of any injury which have reduced the capability of an individual to function as a whole man" is a more accurate and precise manner of stating what our earlier cases and those from other jurisdictions have termed damages recoverable for the permanent effects of the injury.

> "Generally, recovery may be had, in personal injury actions, for permanent injuries or permanent impairment of health—that is, for the loss resulting from complete or partial disability in health, mind, or person thereby occasioned.... The destruction or impairment of any physical function is a proper element of damages, and so is deprivation of mental power as a result of physical injury, as where the injury causes a permanent mental defect or disease." 22 Am.Jur.2d *Damages* § 117 (1965). (Footnotes omitted)

*See Lawrence v. Nelson,* 145 W.Va. 134, 113 S.E.2d 241 (1960); *Bailey v. DeBoyd,* 135 W.Va. 730, 65 S.E.2d 82 (1951); *Miller v. Gas Co.,* 88 W.Va. 82, 106 S.E. 419 (1921).

What *Jordan* makes clear is that once a permanent injury has been established that in addition to future pecuniary expenses or liquidated damages and losses such as medical, hospital and kindred expenses and loss of future wages and earning capacity, the plaintiff is entitled to additional damages for future pain and suffering and for the permanent effect of the injury itself on "the capability of an individual to function as a whole man." 158 W.Va. at 51, 210 S.E.2d at 634.

We believe that the loss of enjoyment of life is encompassed within and is an element of the permanency of the plaintiff's injury. To state the matter in a slightly different manner, the degree of a permanent injury is measured by ascertaining how the injury has deprived the plaintiff of his customary activities as a whole person. The loss of customary activities constitutes the loss of enjoyment of life.

While the certified question speaks of the loss of capacity to enjoy life by a semi-comatose plaintiff who is unable to sense his loss, this question as argued to us contains two parts. First, whether we recognize the loss of enjoyment of life as a separate element of damages. Second, whether as an incident to such a damage right it must be shown that the plaintiff is conscious of the fact that he has lost any enjoyment of life.

The Court of Appeals, in its decision to certify the question, correctly recognized that our cases in this area were not dispositive. *Flannery v. United States,* 649 F.2d 270 (4th Cir.1981). In *Nees v. Julian Goldman Stores, Inc.,* 109 W.Va. 329, 154 S.E. 679 (1930), and *Warth v. Jackson County Court,* 71 W.Va. 184, 76 S.E. 420 (1912), reference was made to the impairment of capacity to enjoy life as a part of the recoverable damages for personal injuries but there was no discussion of how the impairment of the capacity to enjoy life fitted into the overall damage picture.[5]

---

**4.** In the text of *Jordan, supra,* 158 W.Va. at 52, 210 S.E.2d at 634, these cases were cited for this proposition: *Lawrence v. Nelson,* 145 W.Va. 134, 113 S.E.2d 241 (1960); *Shreve v. Faris,* 144 W.Va. 819, 111 S.E.2d 169 (1959); *Bailey v. DeBoyd,* 135 W.Va. 730, 65 S.E.2d 82 (1951); *French v. Sinkford,* 132 W.Va. 66, 54 S.E.2d 38 (1948).

**5.** The Court of Appeals in *Flannery v. United States, supra,* also noted that similar short statements about loss of enjoyment of life could be found in other West Virginia cases. *E.g., Larzo v. Swift & Co.,* 129 W.Va. 436, 40 S.E.2d 811 (1946); *Gibbard v. Evans,* 87 W.Va. 650, 106 S.E. 37 (1921); *Colebank v. Standard Garage Co.,* 75 W.Va. 389, 84 S.E. 1051 (1915).

There are cases where courts have determined that the loss of enjoyment of life in a non-comatose situation is an element of recoverable damages. In these cases the issue is whether the jury can be instructed to consider as a part of the elements of damages the plaintiff's loss of enjoyment of life or whether such factor is already embraced in an existing category such as pain and suffering. In *Mariner v. Marsden*, 610 P.2d 6 (Wyo.1980), the court with no detailed analysis concluded:

"Since loss of enjoyment of life is compensable, the fact finder—in a case in which loss of enjoyment of life is proved—may either make a separate award for loss of enjoyment of life or take into consideration the loss of enjoyment of life in arriving at the total general damages." (Footnote omitted)

In arriving at this conclusion, the Wyoming court in *Mariner v. Marsden, supra* at 12, relied primarily on *Swiler v. Baker's Super Market, Inc.*, 203 Neb. 183, 187, 277 N.W.2d 697, 700 (1979),[6] where the court in discussing the propriety of a statement in a damage instruction informing the jury it could take into consideration the loss of enjoyment of life experienced by the plaintiff stated:

" 'The argument is that this part of the instruction represents a duplication of the elements of permanent disability and of pain and suffering, and thus the jury was permitted to award double damages for the same loss. There was evidence introduced to support the plaintiff's diminished capacity to enjoy life with respect to activities formerly enjoyed, deprivations of pleasure, and inconvenience.

" '... A majority of courts, however, have approved inclusion of loss of enjoyment of life as a consideration that may be instructed upon in a proper case and be considered by the jury ....

" 'Loss of enjoyment of life may, in a particular case flow from a disability and be simply a part thereof, and where the evidence supports it, may be argued to the jury.' " (Emphasis omitted)

The cases that recognize the loss of enjoyment of life do not analyze its relationship to the permanency of the plaintiff's injury in any detail. Yet, it is obvious that the loss of enjoyment of life is directly linked to the permanency of the plaintiff's injury and a jury in evaluating the nature and degree of the permanency of the plaintiff's injury will ascertain how such injury has affected his ability to perform and enjoy the ordinary functions of life. This loss of capacity to enjoy life is not a function of pain and suffering in the traditional sense of those words since one can lose his eyesight or a limb and be without physical pain. Yet, it is obvious that such injuries will impair the person's capacity to enjoy life.

Where the element of the loss of enjoyment of life is fitted into the damage picture may be somewhat semantical,[7] but we believe it logically should be a part of evaluating the permanency of the plaintiff's injury. We believe that our definition of a permanent injury which includes "those future effects of an injury which have reduced the capability of an individual to function as a whole man," as set forth in *Jordan, supra*, 158 W.Va. at 52, 210 S.E.2d at 634, is the appropriate area for considering the element of the loss of enjoyment of life.

---

**6.** *Swiler v. Baker's Super Market, Inc., supra,* cited *Powell v. Hegney*, 239 So.2d 599 (Fla.App. 1970); *Pierce v. New York Central Railroad Company*, 409 F.2d 1392 (6th Cir.1969); *Hildyard v. Western Fastners, Inc.*, 33 Colo.App. 396, 522 P.2d 596 (1974), and referenced the cases cited in Annot., 15 A.L.R.3d 514 (1967).

We note that commentators have not consistently devised or applied a uniform analysis for loss of enjoyment of life damages. Comment, *Loss of Enjoyment of Life As a Separate Element of Damages*, 12 Pac.L.J. 965 (1981); Comment, *Loss of Enjoyment of Life—Should it be a Com-*

*pensable Element of Personal Injury Damages?*, 11 Wake Forest L.Rev. 459 (1975); Comment, *Nonpecuniary Damages for Comatose Tort Victims*, 61 Georgetown L.J. 1547 (1973).

**7.** At least one court has fitted the loss of enjoyment of life as an element of mental suffering. *E.g., Judd v. Rowley's Cherry Hill Orchards, Inc.*, 611 P.2d 1216, 1221 (Utah 1980) ("Included in mental pain and suffering is the diminished enjoyment of life as well as the humiliation and embarrassment resulting from permanent scars and disability.").

We are not unmindful of the defendant's argument that the law does not permit double recovery for the same damages. We recently spoke to this issue in Syllabus Point 7 of *Harless v. First National Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982):

> "It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories."

■ Here, however, we have an *element,* a component, of damages that may be considered by a jury in determining the amount of its award. Just as a jury may consider the nature, effect and severity of pain when fixing damages for personal injury, or may consider mental anguish caused by scars and disfigurement, it may consider loss of enjoyment of life. *Sargent v. Malcomb,* 150 W.Va. 393, 146 S.E.2d 561 (1966); *Robinson v. Virginia-Pocahontas Coal Co.,* 78 W.Va. 94, 88 S.E. 620 (1916).

In the present case the trial judge did not award separate amounts for both the permanency of the plaintiff's injuries and the loss of enjoyment of life. If this had been done, there would have been an impermissible duplication of damages. It is obvious from the evidence that the plaintiff was totally and permanently disabled and had by virtue of this fact lost all of life's enjoyment. In this particular case, the $1,300,000 award could be correctly characterized as the amount of the plaintiff's permanent disability resulting from his loss of capacity to enjoy life or as *Jordan* expresses it as his reduced capability "to function as a whole man." [8]

■ Having determined that the loss of enjoyment of life is an element of a permanent injury award, we consider whether it can be recovered by a semi-comatose plaintiff who because of the severity of his injuries is not aware of his loss of life's enjoyment. We have earlier pointed out that *Jordan* evolved the test that once the medical evidence demonstrates that a plaintiff has a permanent injury then under our law he is permitted to recover future damages such as pain and suffering and medical expenses, but in addition damages for the future effects of the injury which has reduced his capability "to function as a whole man." Thus the permanency of the plaintiff's injury relates to the "whole man" and is cast in terms of an objective standard.

If we put aside the label "loss of enjoyment of life" and look to its underlying function which is to measure the degree of permanent disability to the whole person arising from the injuries inflicted, some of the subjective content of the analysis disappears. Consequently, the plaintiff's lack of knowledge of the extent of his permanent injury is not a factor under *Jordan's* "whole man" test.

We do not believe that the plaintiff's subjective knowledge of the extent of his loss should be controlling. There are obviously many situations, particularly injuries to infants or young children where there experience of life is so minimal that their ability to comprehend the extent of their permanent disability is negligible, and yet these young plaintiffs have not been denied recovery for permanent injuries. A classic illustration is the infant who has been blinded by excessive amounts of oxygen in the incubator. *E.g., Penetrante v. United States,* 604 F.2d 1248 (9th Cir.1979); *Greenburg v. Bishop Clarkson Memorial Hospital,* 201 Neb. 215, 266 N.W.2d 902 (1978); *Air Shields, Inc. v. Spears,* 590 S.W.2d 574 (Tex.Civ.App.1979); *Shockley v. Prier,* 66 Wis.2d 394, 225 N.W.2d 495 (1975). The same argument, as made in this case, could be advanced in regard to the child's blindness that since he never had any vision or at best only for a limited

---

8. In the present case the trial court was sitting as the factfinder and decided to assign separate amounts for the different categories of damages. Ordinarily, a jury will return a unitary sum for damages in a personal injury action for all compensatory damages and is not required to itemize the individual elements of damages since we look at the entire verdict to determine if it is excessive.

time span, he would be unaware of what full vision meant and consequently his permanency as reflected by his subjective knowledge of his loss of enjoyment of visual life would be minimal.[9]

The argument that the plaintiff must have an awareness of the extent of his loss as a defense to a permanent injury bears some analogy to the argument that the defendant should not be liable for injuries made more severe because of the plaintiff's preexisting ill health or disability. Thus, the one-eyed person who is blinded in his good eye should only be found half-blind. This principle has been uniformly rejected in the personal injury damage law. *Cf. Perkins v. Monongahela Valley Traction Co.*, 81 W.Va. 781, 95 S.E. 797 (1918); 22 Am.Jur.2d *Damages* § 122 (1965). We accordingly hold that a plaintiff in a personal injury action who has been rendered permanently semi-comatose is entitled to recover for the impairment of his capacity to enjoy life as a measure of the permanency of his injuries even though he may not be able to sense his loss of enjoyment of life.

## II.

■ With regard to the question of whether a trial court, when sitting as a finder of facts in a personal injury action, can deduct from the plaintiff's award for lost earning capacity an amount equal to the federal income taxes which would have been levied on such income had it actually been earned, we decline to make a distinction between a trial to the court and a jury trial. The main thrust of the defendant's argument for such a distinction is that a trial court is capable of making the appropriate tax calculation whereas a jury might not be. This parallels an analysis that is frequently used by courts who refuse income tax consideration on lost earning capacity because it would be too confusing for the jury to make such a calculation. Annot., 63 A.L.R.2d 1393 (1959).

A more basic problem, however, is the obvious dichotomy this would engender in our damage law if we permitted one damage rule if the case were tried to the judge and another damage rule if it were tried to the jury. Such a result besides being illogical would invariably lead the plaintiff's attorney who had any substantial claim of lost earning capacity to demand a jury trial.

Both parties cite *Crum v. Ward*, 146 W.Va. 421, 122 S.E.2d 18 (1961), where we held in Syllabus Point 12:

"In an action for damages for personal injuries, it is not reversible error for the court to refuse to read to the jury an instruction to the effect that, in the event of a recovery by plaintiff, no sum should be allowed in respect to any Federal income tax."

The parties as well as the Court of Appeals recognize that *Crum* is not controlling on the issue presented here since it involved a general instruction to the jury that a plaintiff's damage award is not subject to income taxes. The plaintiff urges that *Crum's* holding represents the majority view as to instructions and that a majority of courts also hold that the income tax impact need not be taken into account in calculating impairment of future earning capacity. Annot., 63 A.L.R.2d 1393 (1959).

The defendant cites *Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), *reh. denied*, 445 U.S. 972, 100 S.Ct. 1667, 64 L.Ed.2d 250, where the Supreme Court ruled in a Federal Employers Liability Act (FELA) case, that the lower court erred in not permitting evidence of the income tax liability on future earnings. *Accord Cazad v. Chesapeake & Ohio Railroad Co.*, 622 F.2d 72 (4th Cir.1980). The First Circuit Court of Appeals has recognized that *Norfolk & Western Railway Co.* is limited to FELA cases and had this to say about the opinion: "Moreover our research indicates that the *Norfolk and Western* cases stands

---

**9.** All counsel draw our attention to several English cases that have dealt with the loss of enjoyment of life to a comatose plaintiff and have upheld such awards. *E.g., Wine v. Kay*, 1 Q.B. 638 (1962); *Sherman v. Folland*, 2 K.B. 43 (1950); *Fair v. London and Northwestern Railway Co.*, 21 Law Times, New Series 326 (1869). Their reasoning is not particularly helpful because of the differences in the English and our damage law.

against a mountain of contrary state authority (*circa* 28 states do not consider tax impact; 6 do)." *Estate of Spinosa*, 621 F.2d 1154, 1158–59 (1st Cir.1980).

Whatever the initial Congressional intent was in first enacting Section 104 of the Internal Revenue Code which exempts income tax on personal injury awards, it is clear that under our progressive income tax rate system if there were no exemptions, the entire amount of an injured plaintiff's future loss of earnings would be subject to being taxed in the year the damage award was received.[10] The unfairness of this result is apparent on future loss of earnings which traditionally are calculated on the plaintiff's future work life expectancy and then discounted to present day value.[11]

As previously noted, a majority of courts have concluded that the plaintiff's future loss of earnings should not be subject to a deduction for the impact of federal income taxes. A number of reasons are advanced, some are perhaps more persuasive than others, as summarized in Annot., 63 A.L. R.2d 1393, 1396 (1959), which we quoted in *Crum v. Ward*, 146 W.Va. at 443–44, 122 S.E. at 31:

" 'Courts so ruling have rather generally considered that income tax liability or saving is a matter not pertinent to the damages issue, being a matter between the plaintiff and the taxing authority, of no legal concern to the defendant; that the amount of income tax which might become due on one's prospective earnings in future years is too conjectural to be considered in fixing damages; or that to introduce the income tax matter into a lawsuit for damages would be unduly complicating and confusing * * * '."

**10.** We recognize that under the Internal Revenue Code, Sections 1301–1305, such earnings would be entitled to the income averaging provisions. A comprehensive review of the tax considerations is contained in Yorio, *The Taxation of Damages: Tax and Non-Tax Policy Considerations,* 62 Cornell L.Rev. 701 (1977).

**11.** This process is described in Peck & Hopkins, *Economics and Impaired Earning Capacity in Personal Injury Cases,* 44 Wash.L.Rev. 351, 353 (1969):

The main reason advanced by most courts in refusing to take income tax consequences into consideration in fixing damages for impairment of earning capacity is that the amount of one's future income tax liability is too conjectural or speculative. *Stokes v. United States*, 144 F.2d 82 (2nd Cir.1944); *Hall v. Chicago S.N.W.R. Co.*, 5 Ill.2d 135, 125 N.E.2d 77, 50 A.L.R.2d 661 (1955); *Lumber Terminals, Inc. v. Nowakowski*, 36 Md.App. 82, 373 A.2d 282 (1977); *Missouri-Kansas-Texas Railroad Co. v. Miller*, 486 P.2d 630 (Okl.1971). *See* Comment, *Personal Injuries: Should Non-Taxability of Judgments Decrease Award?,* 8 Tulsa L.J. 242, 245–47 (1972). In *Johnson v. Penrod Drilling Company*, 510 F.2d 234, 236–37 (5th Cir.1975), *cert. denied*, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58, the conjectural nature of the future income tax obligation was discussed in these terms:

"Allowing this subject matter to be considered would require the admission of expert opinion evidence as to what future income tax rates and deductions are expected as well as opinion evidence on what current rates and deductions would be applicable to the subject wage earner during various phases of the jury's future loss calculations. Of necessity, this evidence would have to be accompanied by an instruction from the court as to the application of these rates to such untaxable compensatory elements (and, in some cases, such taxable punitive damage elements) as may be involved in the verdict. To compound the complexity and the jury's difficulty in reducing the proof to a monetary award, the tax effect of contingent attorneys' fees and the taxability

"The actuarial approach establishes the present value of destroyed earning capacity on the basis of calculations which assume that income lost during a base year would have been received over a period of years equal to the life (or work-life) expectancy of the person injured or deceased. This sum is then discounted to yield a capitalized value which would pay out (from both principal and interest) a fixed income over the specified number of years."

*See also* note 6, *Tenore v. Nu Car Carriers, Inc.,* 67 N.J. 466, 341 A.2d 613 (1975).

of the interest earnings under the annuity principle used to calculate the reduced present value of future wages would have to be analyzed."

We also recognize that the purpose of reducing the loss of earnings to present day value is to arrive at a sum of money that when invested by the plaintiff will over the years provide by expending both principal and income an annual amount to supplant his loss of earnings. To the extent that this sum yields income or interest it is subject to federal income tax and as a result at least a part of plaintiff's loss of future earning capacity is subject to the federal income tax.

Consequently, we adopt the majority view and hold that in computing the loss of future earning capacity a deduction need not be made for federal income taxes.

The certified questions having been answered, this case is dismissed from the docket.[12]

Answered and Dismissed.

---

**12.** The Court wishes to extend its appreciation to the firms of Jackson, Kelly, Holt & O'Farrell and Preiser & Wilson, who were requested to file *amicus curiae* briefs.