## BALTIMORE AND OHIO RAILROAD COMPANY v. FAUST.

[No. 12,317. Filed July 2, 1925. Petition for rehearing denied January 14, 1926. Transfer denied December 10, 1926.]

1. MASTER AND SERVANT.—Answers to interrogatories held not to show assumption of the risk by injured servant.—Answers to interrogatories held not to show assumption of risk by an injured servant, although they showed his knowledge of the manner of doing the work at which he was engaged at the time of the injury but did not show that he knew and appreciated the danger thereof. p. 439.

2. MASTER AND SERVANT.—Answers to interrogatories not in conflict with jury's conclusion that workman was engaged in interstate commerce.—Answers to interrogatories held not to preclude the conclusion that a workman killed while icing a refrigerator car was engaged in interstate commerce within the federal Employers' Liability Act (U. S. Comp. St. §§8657-8665) at time of injury resulting in his death. p. 439.

3. COMMERCE.—Rule stated for determining when employee engaged in interstate commerce.—In determining whether an injured railroad employee was engaged in interstate commerce

at the time of his injury, the test to be applied is whether he was engaged in interstate transportation or in work so closely related to it as to be practically a part of it.    p. 440.

4. MASTER AND SERVANT.—*Employee of interstate railroad while icing car intended for use in interstate transportation was engaged in interstate commerce.*—Where an employee of interstate railroad was injured while icing a car which had been selected for use in transporting freight to another state, he was engaged in interstate commerce, even though the car was taken out of service and another substituted for it.    p. 442.

5. DAMAGES.—*Damage for death of railroad employee under federal Employers' Liability Act held not excessive.*—Damages for death of railroad employee engaged in interstate commerce so as to come within the federal Employers' Liability Act *held* not excessive.    p. 443.

From DeKalb Circuit Court; *W. P. Endicott,* Judge.

Action by Theressa Faust, as executrix of the will of John H. Faust, against the Baltimore and Ohio Railroad Company.   From a judgment for plaintiff, the defendant appeals. *Affirmed.*   By the court in banc.

*Mountz & Brinkerhoff* and *Charles D. Clark,* for appellant.

*Nash & Henslee* and *Payer, Winch, Minshall & Karch,* for appellee.

This action was instituted by Theressa Faust, Executrix, against the Baltimore and Ohio Railroad Company to recover damages for the death of John H. Faust, alleged to have been caused by the defendant's negligence.

John H. Faust had been employed by the defendant in its railroad yards at Garrett, Indiana, for several years.   In addition to other duties, he was required to assist in icing refrigerator cars.   These cars were supplied with ice from an ice-house located in defendant's yards.   The work was done by several workmen who dragged the ice out of the ice-house to a platform nearly level with the tracks; thence they moved it up an inclined chute to another platform which was on a level

with the top of the cars and from which the ice was placed in the cars through openings in the roof.   The workmen pushed the blocks of ice up the chute as far as they could reach by the use of poles or handles, to the ends of which were attached metal hooks; and a man on the elevated platform would pull the ice-blocks the rest of the way with his ice-hook.   On the night he received his injury, Faust and his fellow workmen had been ordered to ice a certain car designated as "B. & O. No. 14383."   In pushing the ice up the chute, two of the workmen stood on the lower platform, one on either side of the chute.   Another workman stood on the upper platform and by striking his ice-hook into the top of a cake of ice assisted by pulling it upon the platform. Faust was on one side of the chute at the lower platform.   When a cake of ice neared the top of the chute, in some manner, the men lost control of it.   It slid back down the chute and struck Faust on the chest, thereby seriously and fatally injuring him.

It is averred in the complaint that the car which Faust was assisting to ice had been selected and assigned by the defendant for use in hauling freight and merchandise originating in the State of Indiana and consigned to and destined for a place in another state of the United States; that the car had been assigned by the defendant, and was then being prepared by it, for use in hauling merchandise and freight as above described; that the car was being iced in order that it might be used as aforesaid; and that therefore the plaintiff's decedent was employed in interstate commerce and traffic by rail.

The complaint also charges that the defendant carelessly and negligently failed to furnish and provide for use in the performance of the work safe, suitable and adequate hooks for handling the blocks of ice; and carelessly and negligently provided, furnished and used in

the work hooks of soft metal with dull points and loose and shaky handles, so that it was difficult, if not impossible, to secure a firm hold on the block of ice; and carelessly and negligently failed and neglected to examine, inspect and keep in a reasonably safe and suitable condition the hooks used in the performance of the work; and carelessly and negligently failed to get a secure hold on the heavy block of ice and to hold the block after it had been shoved partially up the inclined way.

The following facts were adduced in evidence in the form of stipulation signed by counsel for each party:

"That on July 21, 1921, George Freese's Sons of Nappanee, Indiana, requested of defendant's station agent at Nappanee, Indiana, an iced refrigerator car to be furnished at Nappanee to be loaded for shipment to Pittsburgh, Pennsylvania; that defendant's agent at Nappanee communicated the request of the defendant's car distributor at Garrett, Indiana; that pursuant to the request refrigerator car No. 14383 was iced at Garrett by the crew of car inspectors in which John Faust was employed; that after being iced it was placed the next morning in a local freight train and billed to the defendant at Nappanee for the purpose of being delivered to George Freese's Sons in compliance with their request; that when the car reached Albion, Indiana, the draw bar broke, making it impossible to move the car further and it was returned to defendant's shops at Garrett next day for repairs; that the car was never delivered to George Freese's Sons but in lieu thereof another car was sent the shipper by extra train; that the substituted car was loaded by George Freese's Sons with butter and eggs and on July 23, 1921, consigned to the customer at Pittsburgh, Pennsylvania, and transferred to its destination."

Nineteen interrogatories were answered by the jury.

The first eight relate to Faust's familiarity with the kind of work he was doing at the time of the accident. These answers show that he had been employed as car inspector for several years; that one of his duties was to help ice refrigerator cars; that he had regularly assisted in icing cars at the ice-house; that the ice-house and platforms around it had been in use for several years; that the arrangement of the ice-house and platforms had not changed for several years; that he had helped a great many times to ice cars; that he and other workmen had used the same tools and equipment in icing cars that they were using at the time of the accident; and that the elevated platform was seven feet and seven inches above the lower platform. The remaining interrogatories relate to the ultimate question whether Faust was engaged in interstate commerce and the answers followed the stipulation above set forth.

Trial resulted in a verdict for the plaintiff in the sum of $20,000, on which judgment was rendered. The errors relied on for reversal are (1) overruling the motion for judgment on interrogatories and (2) overruling the motion for a new trial.

DAUSMAN, J.—Under the first assignment of error, the appellant contends that the answers to the interrogatories show (1) that the workman assumed the risk and (2) that he was not engaged in interstate commerce at the time of the accident. We cannot sustain either contention. The answers to the interrogatories do not show that the workman knew and appreciated the danger and then continued in the dangerous position. *Pennsylvania Co.* v. *Stalker, Admx.* (1918), 67 Ind. App. 329. Nor do the answers to the interrogatories preclude the legitimate conclusion that the workman was engaged at the time of the accident in interstate commerce. 18 R. C. L. 850 *et seq.; New York, etc., R. Co.* v. *Carr* (1915), 238 U. S. 260,

59 L. Ed. 1298. The answers to the interrogatories are not in irreconcilable conflict with the verdict.

Under the second assignment of error, the appellant contends that the verdict is not supported by sufficient evidence, that certain instructions given are erroneous, and that certain instructions requested should have been given. We have carefully considered these contentions and we are of the opinion that there is no reversible error presented. The law applicable to the various phases of this case is well settled and a more extended discussion is unnecessary.

Judgment affirmed.

## On Petition for Rehearing.

McMahan, J.—Appellant in support of its petition for a rehearing contends that we failed to consider its contention that appellee's decedent at the time of his injury was not engaged in interstate commerce. Having stated the facts as disclosed by the evidence our holding that the answers of the jury to the interrogatories did not preclude the legitimate conclusion that the decedent was engaged in interstate commerce, necessarily was a holding that the evidence was sufficient to sustain the verdict on the theory that he was engaged in interstate commerce, as there could be no recovery except upon that theory.

Appellant in effect concedes that if the car in question had after the decedent's injury been delivered to the shipper at Nappanee and loaded with freight for 3. shipment to another state, the deceased would have been engaged in interstate commerce at the time he was injured. It contends, however, that because the car became disabled and another was substituted in its place, the deceased was not employed in interstate commerce when injured. We cannot agree with this contention. The test to be applied in cases

of this kind is, "Was the employee at the time of the injury engaged in interstate transportation, or in a work so closely related to it as to be practically a part of it?" *New York Central R. Co.* v. *White* (1917), 243 U. S. 188, 61 L. Ed. 667; *Erie R. Co.* v. *Welsh* (1916), 242 U. S. 303, 61 L. Ed. 318.

A switchman who turns the switch that passes a car from the repair shop to the main track to take its place in interstate commerce is engaged in interstate commerce. Suppose such switchman, and the engineer and fireman on the locomotive which was drawing the car and which was on its way from the round-house to draw a train loaded with freight in interstate commerce, should be injured or killed, could the railroad evade liability under the Federal Employers' Liability Act by withdrawing the locomotive from service and substituting another in its place? We think not. The car in question had been set aside for use in interstate transportation. It had been iced and started on its way to be loaded. It was in transit for use in interstate business and the fact that it was later taken out of service and another substituted did not change the character of the work which had theretofore been performed in icing it and getting it ready for the intended use.

Appellant was engaged in interstate commerce. This being true, we are only concerned with the nature of the decedent's work at the time of his injury. The Supreme Court of the United States in *Pedersen* v. *Delaware, etc., R. Co.* (1913), 229 U. S. 146, 57 L. Ed. 1125, in discussing a similar question, said: "Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in

the nature of a duty resting upon the carrier?" And, after calling attention to the contention that interstate commerce can be separated into its several elements, and the nature of each be determined, regardless of its relation to the business as a whole, the court said: "But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?"

Appellant, in the instant case, was preparing a car for use in interstate commerce. It had set the particular car aside for use in that business. The decedent was preparing that car for that particular business. The icing of the car was necessary to its use in that business. As was said in *Lloyd* v. *Southern R. Co.* (1914), 166 N. C. 24, 35, 81 S. E. 1003, 7 N. C. C. A. 520: "His work was done in a preparatory stage of interstate commerce, but was none the less part of it." See *Armbruster* v. *Chicago, etc., R. Co.* (1924), 166 Iowa 155, 147 N. W. 333, where an employee was coaling an engine preparatory for service in hauling freight from one state to another. We hold the decedent at the time of his injury was employed in interstate commerce.

Appellant contends the court erred in giving instruction No. 9. The contention is that this instruction stated that the mere fact that the tools used by the decedent were defective was proof of negligence. But we do not think the instruction is subject to this objection. This instruction told the jury that appellant was only required to exercise ordinary care to furnish tools reasonably safe for the use of which they were intended, and the same idea was expressed in instruction No. 8. When the whole of instructions Nos. 8 and 9 are considered, appellant's contention cannot be sustained.

Appellant says it also "questioned the ruling of the court in allowing the appellee to prove certain issuable

facts by the opinion of witnesses." We are of the opinion, however, that no reversible error is shown in the admission of the evidence of which complaint is made.

The decedent had been in appellant's employment a number of years. When injured, he was fifty-one years old, healthy, industrious, and of good habits. He was earning about $2,100 a year, all of which was expended for the support and maintenance of his family, which consisted of himself, his wife and four sons, ranging in ages from twelve to twenty years. While the amount of the verdict is quite substantial, we are not prepared to hold as a matter of law that it is excessive.

Petition for rehearing denied.