PROBST, RECEIVER *v.* SPITZNAGLE.

[No. 27,194. Filed February 20, 1939. Rehearing denied April 3, 1939.]

*Barnard & Walker,* for appellant.

*Noel, Hickam, Boyd & Armstrong, Livengood & Livengood,* and *Frank S. Pryor,* for appellee.

SHAKE, J.—Appellee recovered a judgment in damages against the appellant in an action for personal injuries. The complaint was predicated on the Federal Safety Appliance Act (U. S. C. A. Title 45, §§1 to 46), and the negligence charged was that the top of a box car had thereon some wet or slippery substance which had adhered to appellee's shoes as he walked thereon in the discharge of his duties as a freight train conductor; that in climbing down from said car by means of grab

irons attached thereto, appellee was caused to slip and fall by reason of said substance on his shoes, thereby suffering injuries.

The errors complained of grow out of the overruling of the motion for a new trial. They relate to the giving of instructions 8 and 9, and to the admission in evidence as an exhibit of the shoes worn by appellee at the time of the accident. Said instructions are as follows:

"Instruction No. 8. The court instructs you that if prior to the alleged injury a shipper ordered from the defendant and received on said shipper's switch in the city of Attica, State of Indiana, an empty box car suitable for being loaded with grain for interstate shipment, and that prior to said alleged injury, said car was definitely designated and set aside to be loaded with grain, for the purpose of consigning, shipping and selling the same to a person, firm or corporation located in the city of Chicago, State of Illinois, and that said car was loaded with such freight, and was sold, shipped and consigned by said shipper to such person, firm or corporation located in the city of Chicago, State of Illinois, and if after said car was set upon said switch in said city of Attica and so designated and set aside for said purpose, the defendant caused said car to be removed from said switch and to be reset upon said switch, and in the course of said switching operation and in the course of his employment therein, the plaintiff was injured, then and in that event, the defendant, at the time of said injury, if any, was engaging in commerce between two of the several states of the United States, and the plaintiff at said time was employed by the defendant in such commerce.

"Instruction No. 9. The court instructs you that if at the time of the alleged injury the plaintiff was engaged in the course of his duties and pursuant to the order of the defendant, in a switching operation the purpose of which was to set or reset upon a spur track in the city of Attica, Indiana, for unloading a loaded car of coal which had been consigned by a coal mining company in the state of Kentucky to a company using said spur track in the city of Attica,

Indiana, and which had been shipped and transported pursuant to said consignment from said Kentucky point to said company in Attica, Indiana, on the lines of the defendant and its connecting carriers, and that at said time said car of coal had not been unloaded by the consigns, then and in that event, the defendant, at the time of said injury, if any, was engaged in commerce between two of the several states of the United States and the plaintiff at said time was employed by the defendant in such commerce."

As abstract statements of the law the above instructions are not to be approved. As to number 8, what happened after the accident occurred, with reference to the sale of the contents of the car to someone in Chicago, and the subsequent consignment and shipment of the car to that point, would not determine whether said car was in interstate commerce when the injury occurred. If the grain car had been "definitely designated and set aside to be loaded with grain, for the purpose of consigning, shipping and selling the same to a person, firm or corporation located in the city of Chicago," to use the language in instruction 8, that would have been enough to make it an instrumentality of interstate commerce. *Baltimore, etc., R. Co.* v. *Faust* (1926), 85 Ind. App. 435, 148 N. E. 433, 150 N. E. 239; *Mappin* v. *Atchison, Topeka, etc., Ry. Co.* (1926), 198 Calif. 733, 247 P. 911, 49 A. L. R. 1330 (certiorari denied 273 U. S. 729, 71 L. Ed. 862.) When the instruction went further and added "that said car was loaded with such freight, and was sold, shipped and consigned by said shipper to such person, firm or corporation located in the city of Chicago," it imposed a condition unnecessary to establish interstate commerce. The inclusion of the clause last quoted therefore rendered the instruction more favorable to appellant than it was entitled. The character of the car, as an instrument of interstate commerce, must be determined as of the time when the accident happened,

though, of course, its past uses and, under some circumstances, what was afterwards done with it, may throw some light on the subject. Instruction number 9 is open to more serious objections. Whether the coal car referred to therein had terminated its interstate movement did not depend upon the circumstance of unloading. Delivery of the shipment to the consignee, not unloading, is the true test, though unloading may be a part of the act of delivery when the contract so provides or when necessary, as in the case of package or parcel shipments. A carload shipment which is to be unloaded by the con- · signee is delivered when the car reaches its destination.

Whether the giving of the instructions quoted was harmful depends upon the facts to which they were applied. An examination of the evidence discloses the following with respect to the movements and uses of the cars involved: On November 17, 1931, Nixon and Vandeventer made a requisition on the appellant for an empty grain car for their use at Attica, Indiana. Appellant received such a car (N. Y. C. 247956) from the Big Four Railroad at Swanington, 22 miles north of Attica, on November 18th. The car arrived in Attica on the evening of the 18th and was on the Nixon and Vandeventer switch the next morning. At the time Nixon and Vandeventer ordered the car from the railroad they did not know to what point it would be shipped. A load of grain, afterwards placed in the car, was sold by them to a firm in Chicago on November 19th. A bill of lading was issued on November 21st and the shipment moved out on November 23rd. On November 19th appellant received from another railroad at Veedersburg, Indiana, a car of coal (L. & N. 7268) shipped from a point in Kentucky and billed to Nixon and Vandeventer at Attica, Indiana. Appellant transported said car over its line to Attica and it arrived there at 9:45 P. M. on November

19th. Appellee, who was conductor of the train which contained the coal car, testified:

> "I didn't know where they (Nixon and Vandeventer) unloaded the coal, so I just put it (the car) on their coal track."

On the next evening, November 20th, appellant received a "switching list" from the appellant's agent at Attica directing him to set or spot the coal car at the rear or north end of the Nixon and Vandeventer switch on which it was then standing. The point indicated in the order was suitable for unloading coal, and appellee had set cars there for that purpose before. To carry out this order required that the positions of the coal car and the grain car should be reversed, and in this movement appellee received his injuries about 5:45 o'clock on the morning of November 21st.

It is apparent from the above summary of the evidence relating to the status of the cars at the time of the accident that the coal car had not lost its character as an instrumentality of interstate commerce, with which it became impressed en route from Kentucky to Indiana. It had not yet reached its destination, which was the point of ultimate delivery on the consignee's switch track. The testimony of appellee, as conductor in charge, indicates quite clearly, we think, that when he caused the car to be placed on the switch track on the night of November 19th he was not undertaking to make delivery, but was merely putting it aside where it might stand by until specific directions as to its final destination should be indicated. The switching list placed in his hands on the next morning amounted to such directions. The evidence clearly indicates that there had been no delivery of the coal car when the accident occured. Inasmuch as the coal car was still in interstate commerce when the movement resulting in the accident occurred, it is quite immaterial whether, at that time, the grain car had entered

upon such commerce, since the movement of the grain car was made necessary in the delivery of the coal car. This placed both cars in interstate commerce simultaneously for all practical purposes, because both were required to be moved to the end that the coal car might be taken to its final destination.

In *Pennsylvania Co.* v. *Donat* (1915), 239 U. S. 50, 51, 36 S. Ct. 4, 60 L. Ed. 139, upon facts almost identical with those here presented, the court dismissed as "so frivolous as not to need further argument" a contention that a freight conductor necessarily engaged in removing local cars from a switch track to make a place for the delivery of cars from without the state, was not engaged in interstate commerce.

The verdict is amply sustained by the evidence and there is no claim that the damages are excessive. The objection urged against the introduction in evidence of the appellee's shoes went to the weight to be attached to the proof rather than to the admissibility of the exhibits. There was no error in that regard. It is established that appellee was engaged in interstate commerce at the time he was injured. The evidence relating to that subject is practically undisputed and does not admit of any other construction. A statute of this state enjoins upon this court the obligation not to reverse any cause for errors in the proceedings that do not affect the substantial rights of the adverse party. §2-1071 Burns 1933, §175 Baldwin's 1934. In considering the effect of an erroneous instruction this court assumes that the error influenced the result, unless it appears from the interrogatories, the evidence, or some other part of the record that the verdict under proper instructions could not have been different. *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N. E. 577. The evidence and the answers to the interrogatories in this case indicate that the correct result was reached. By its

answer to interrogatory number 5 the jury found that the sole purpose in moving the grain car was to place another car on the spur track to the north thereof. The other car referred to was shown to be the coal car which, as we have already pointed out, was in interstate commerce and had not reached its destination.

The death of the appellee since the submission ▮ of this appeal having been suggested, the judgment is affirmed as of the term of submission, pursuant to section 2-3235 Burns 1933.

Roll, J., absent.