**David J. CANFIELD, Jr., Appellant (Defendant Below),**

v.

**Melvin H. SANDOCK and Betty J. Sandock, Appellees (Plaintiffs Below).**

No. 71S03–9012–CV–780.

Supreme Court of Indiana.

Dec. 13, 1990.

Robert J. Palmer, Arthur A. May, Wendell W. Walsh, May, Oberfell & Lorber, South Bend, for appellant.

Robert F. Gonderman, Sr., Robert F. Gonderman, Jr., Gonderman Law Offices, P.C., South Bend, for appellees.

SHEPARD, Chief Justice.

The trial court in this personal injury action instructed the jury to consider the effect of the injury on the "quality and enjoyment of life" as a separate element when awarding damages. The Court of Appeals declared that such an instruction is proper. We hold that such an instruction is erroneous, but conclude that damages to a victim's ability to function are compensable.

In October 1986, David J. Canfield, Jr. struck Melvin Sandock with his car as Sandock walked across a street at an intersection with a green light. Sandock sued Canfield on February 3, 1987, requesting damages for "temporary and permanent physical injury, temporary and permanent pain and suffering, mental suffering, medical expenses and economic loss." The complaint also contained a claim from Sandock's wife for loss of consortium. The case was tried to a jury. It found that Canfield was one hundred percent at fault,

and awarded $125,000 to Sandock and $50,000 to his wife.

Canfield appealed two issues regarding the trial court's jury instructions. He first argued that the trial court erred in deleting from one of his tendered jury instructions a definition of an "excusable or justifiable" violation of a safety statute. Canfield also argued that the trial court erred when it identified the plaintiff's loss of "quality or enjoyment of life" as a separate element which the jury could consider in arriving at its damage award. The third district of the Court of Appeals reversed and ordered a new trial, with each of the panel's three judges expressing separate opinions. *Canfield v. Sandock* (1989), Ind.App., 546 N.E.2d 1237. We grant transfer.

## I. Loss of Quality or Enjoyment of Life

The central issue in this case is whether the trial court erred when it instructed the jurors that they could consider the effect of Sandock's injury upon the quality and enjoyment of his life.[1] In *City of Columbus v. Strassner* (1890), 124 Ind. 482, 489, 25 N.E. 65, 67, this Court held that the trial court erred when it instructed the jurors that if they found for the plaintiff they could "assess ... any 'lack of personal enjoyment' occasioned by the injury" when measuring damages. It was the subjectivity surrounding the term "personal enjoyment" that led the Court to that conclusion:

The question of damages, like other legal propositions, should rest upon some substantial basis. The following inquiries, therefore, suggest themselves: What is "personal enjoyment"? How are we to ascertain to what extent it is possessed by a human being? How can its absence and the cause thereof be demonstrated? If a person for any cause has been deprived of "personal enjoyment" how are we to go about adjusting his loss upon a money basis? These questions seem to be pertinent, but unanswerable, and suggest an insuperable difficulty to the measurement of damages because of loss of "personal enjoyment."

*Id.* at 489, 25 N.E. at 67.

In the century following the *Strassner* decision, courts across the nation have addressed the question of whether loss of "personal enjoyment," usually phrased as "loss of enjoyment of life," may properly be considered as an element of damages in a personal injury case. *See* Annotation, *Loss of Enjoyment of Life as a Distinct Element or Factor in Awarding Damages for Bodily Injury*, 34 A.L.R.4th 293 (1984). The majority of jurisdictions allow jurors to consider "loss of enjoyment of life" as a separate element of damages. *Id.* at 304–09. In addition, a sizeable minority of the states allow jurors to consider "loss of enjoyment of life" as a factor in determining damages by including it as part of the element of pain and suffering. *Id.* at 300–04.

We remain concerned about the subjectivity of terms like loss of "quality and enjoyment of life" and loss of "personal enjoyment." Such terms are vague and open-ended and carry with them the potential for double recovery for the same damages. Consequently, we think instructions which define loss of "quality and enjoyment of life" as a separate element of

---

1. The instruction in question stated in full:

 If you find for the plaintiffs on the question of liability, you must then determine the amount of money which will fully and fairly compensate them for those elements of damage which were proved by a preponderance of the evidence to have resulted from the negligence of the defendant. With respect to the claim of Mr. Sandock, you may consider:
 1. The nature and extent of Mr. Sandock's injuries.
 2. Whether Mr. Sandock's injuries are temporary or permanent.
 3. The physical pain and mental suffering which Mr. Sandock has experienced and the physical and mental suffering he will suffer in the future as a result of his injuries.
 4. The reasonable expense of necessary medical care, treatment and services.
 5. The aggravation of any previous injury or condition.
 6. The effect of his injury upon the quality and enjoyment of his life.
 Record at 369. Elements one through five are like those found at 1 Indiana Pattern Jury Instructions: Civil Nos. 11.20–11.22, 11.25–11.26 (Ind.Judges Ass'n 2d ed. 1989).

damages send a jury to its deliberations too unconstrained with respect to damages.

■■■ Notwithstanding our concern over the language of the instruction at issue, it is apparent that the phrase loss of "quality and enjoyment of life" includes some losses that should be considered by a jury as part of the damage calculation. Certainly, one who gains great pleasure from listening to music deserves compensation for loss of that pastime if a defendant's negligence renders him deaf. Likewise, an amateur golfer deserves compensation for the loss of pleasure he derives from the sport if a defendant's negligence makes it impossible for him to swing a club or walk the course without pain. One who is injured in a way that makes it impossible to lift a child or grandchild suffers a compensable injury. Losses of this sort must be defined more precisely and included in an acceptable element of damages.

Our survey of modern precedent leads us to the approach taken by the Supreme Court of West Virginia. That court described the losses mentioned above as "effects of an injury which have reduced the capability of an individual to function as a whole man." *Flannery v. United States*, 297 S.E.2d 433, 437 (W.Va.1982) (quoting *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618, 643 (1974)). The *Flannery* opinion concluded that this language should be attached to the element of permanency of the injury rather than to the element of pain and suffering. The court reasoned that:

> loss of capacity to enjoy life is not a function of pain and suffering in the traditional sense of those words since one can lose his eyesight or a limb and be without physical pain. Yet, it is obvious that such injuries will impair the person's capacity to enjoy life.

*Id.* at 437.

■■■ Indiana's pattern jury instructions on damages do not use the term permanency. We believe, however, that the notion of the impact of an injury on one's activities over time is embodied in that part of our jury instruction which mentions the "nature and extent of the injury." Ind.Pattern Jury Instruction No. 11.20. Conse-

quently, we hold that trial courts should instruct juries in personal injury cases that they may consider "the nature and extent of the plaintiff's injury, and the effect of the injury itself on the plaintiff's ability to function as a whole person."

■■■ The trial court erred when it instructed the jurors that they could consider "loss of enjoyment of life" as a separate element of damages in this case. An erroneous instruction merits a reversal if it could have formed the basis for the jury's verdict. *See Whitaker v. Kruse* (1990), Ind.App., 495 N.E.2d 223. We will assume that the erroneous instruction influenced the jury's verdict unless it appears from the evidence that the verdict could not have differed even with a proper instruction. *See Probst v. Spitznagle* (1939), 215 Ind. 402, 19 N.E.2d 263.

■■■ Sandock's counsel requested $480,079 for three types of damages. First, counsel asked for the expenses of medical care. The parties stipulated that those expenses amounted to $7039. Second, counsel requested $236,520 for physical and mental pain and suffering. He argued on the basis of the evidence that the accident caused Sandock to suffer "chronic, irritating" physical pain in his lower back from lumbar strain and in his hip from bursitis. He also argued that the accident aggravated Sandock's previously existing arthritic condition. In addition, counsel contended that Sandock has "severe mental suffering" because his injuries prevent him from playing with his grandchildren as he once did and from being the helper and companion to his wife that he was before the accident. Third, counsel requested $236,250 for loss of quality of life. Counsel cited evidence of Sandock's lost ability to play golf frequently, his diminished capacity for relations with his wife, his inability to engage in physical play with his grandchildren, and his lost ability to travel. Responding to this plea for $480,079, the jury awarded $125,000.

All of the items listed are compensable. All would have been compensable under a proper instruction. Plaintiff's counsel did

not ask the jury for generalized "loss of personal enjoyment" damages such as would have been outside the scope of a proper instruction. Because the plaintiff did not request such noncompensable damages from the jury, it can be reliably concluded on appeal that the jury did not award any such noncompensable damages. Thus, the verdict could not have differed even with a proper instruction and giving an erroneous instruction was harmless. *Probst,* 215 Ind. 402, 19 N.E.2d 263.

## II. Defining Excuse or Justification

The second question presented is whether the trial court erred in excluding a definition of "excusable or justifiable" from one of Canfield's tendered jury instructions. The instruction as tendered read:

At the time of the accident, there was in force a statute of the State of Indiana which provides in part:

No person shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute an immediate hazard.

I.C. 9–4–1–87(b).

A violation of this statute creates a rebuttable presumption of negligence on the part of the person so violating the statute or law, unless the person shows that such violation was excusable or justifiable by showing by a fair preponderance of the evidence that such person did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances who desires to comply with the law.

Record at 293.

The trial court modified this instruction by adding information about another safety statute and amending the paragraph about the legal import of violating such statutes. As modified, the instruction read:

At the time of the accident, there was in force a statute of the State of Indiana which provides in part:

No person shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute an immediate hazard.

[A]nother statute provides in part that When facing a green light:

Vehicular traffic, including vehicles turning right or left, shall yield right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent sidewalk at the time such signal is exhibited;

Vehicular traffic shall yeld [sic] the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection; and

Unless otherwise directed by a pedestrian-control signal, pedestrians facing any green signal, except when the sole green signal is a turn arrow, may proceed across the roadway within any marked or unmarked crosswalk.

A violation of this statute creates a presumption of negligence on the part of the person so violating the statute, unless the person shows that such violation was excusable or justifiable.

Record at 367.

 It is generally error for a trial court to refuse to define in its instructions technical and legal phrases relevant to material issues of a lawsuit if it is properly requested to do so. *Conder v. Hull Lift Truck, Inc.* (1982), Ind., 435 N.E.2d 10. As used in this instruction, however, "excusable or justifiable" is not a technical or legal phrase requiring definition. Excuse and justification are words of common usage which take on no unusual meaning in the context of this jury instruction. The trial court might well have assisted the jury had it given the language requested by Canfield, but it did not err in excluding the definition from the tendered instruction.

We vacate the opinions of the Court of Appeals and affirm the judgment of the trial court.

DeBRULER, J., concurs.

DICKSON, J., concurs in result with separate opinion.

GIVAN, J., concurs in part and dissents in part with separate opinion in which PIVARNIK, J., concurs.

DICKSON, Justice, concurring in result.

I concur with the majority in both its result and its principal conclusion that personal injury case jury instructions can authorize consideration of "the nature and extent of the plaintiff's injury, and the effect of the injury itself on the plaintiff's ability to function as a whole person." However, I disagree with the majority's view that the trial court erred when it instructed the jurors that they could consider "loss of enjoyment of life" in their determination of damages.

In view of the substantial and recent discussions of this aspect of damage recovery in other jurisdictions, and the majority position favoring its recognition, I cannot fault the trial court for declining to follow a century-old Indiana decision based on the difficulty in measurement and assignment of damages. The ascertainment of damages for "loss of enjoyment of life" is no more difficult than that for "pain and suffering," a clearly recognized and accepted component of damages. Furthermore, the instruction on damages expressly advised the jury that its verdict had to be based on the evidence and not on guess or speculation.

No detrimental significance should be attached to the separate enumeration of "[t]he effect of his injury upon the quality and enjoyment of his life" as one of six items available for jury consideration in the determination of damages. It is mere conjecture that the jury improperly assigned a separate amount of damages to such consideration. The first two of the other listed factors were "the nature and extent" of injuries and "whether the injuries were temporary or permanent." These do not invite any separate allocation of specific damages. The individual considerations taken as a whole cannot reasonably be seen as a checklist requiring a separate assignment of damage amounts for each factor so as to create any serious risk of double recovery.

I would find no error in the giving of the instruction, but would agree with the majority's formulation for preferred instruction on this issue in the future. In all other respects, I concur with the majority opinion.

GIVAN, Justice, concurring and dissenting.

I concur with the majority opinion's finding that "quality or enjoyment of life" should not be a separate element of damage which the jury could consider in arriving at their verdict.

However, I disagree with the majority in their ultimate conclusion that the erroneous instruction advising the jury that quality and enjoyment of life could be considered as a separate element of damages was harmless error.

As pointed out by the majority opinion, the use of such language in an instruction well could lead to double recovery of damages. For that reason, I cannot say that this Court is in a position to divine whether it contributed to the amount of the jury's verdict. The presence of the erroneous instruction so taints the verdict that it should not be permitted to stand.

I therefore would reverse this case and order a new trial.

PIVARNIK, J., concurs.