## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 10 2018, 10:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Danford R. Due
Charles J. Maiers
Due Doyle Fanning & Alderfer, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
TOWN OF SPEEDWAY

Joseph M. Hendel
Stephenson Morow & Semler
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
CITY OF INDIANAPOLIS

Adam S. Willfond
Office of Corporation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Edward Duke Brown, *Appellant-Plaintiff,* v. The City of Indianapolis and The Town of Speedway, *Appellees-Defendants.* | October 10, 2018 Court of Appeals Case No. 18A-CT-715 Appeal from the Marion Superior Court The Honorable Patrick J. Dietrick, Judge Trial Court Cause No. 49D12-1411-CT-38858 |

**Brown, Judge.**

[1] Edward Duke Brown appeals the trial court's entry of summary judgment in favor of the City of Indianapolis ("Indianapolis") and the Town of Speedway ("Speedway") and the denial of his motion to correct error. We affirm.

*Facts and Procedural History*

[2] On May 25, 2014, Brown attended the Indianapolis 500 at the Indianapolis Motor Speedway ("IMS") with his wife and friends. Brown rode to the race in one of his friend's vehicles, and they parked in someone's yard east of the track and walked westward on the sidewalk adjacent to West 16th Street to the IMS. Following the race and while carrying a backpack, Brown exited the IMS and began to walk eastward on the sidewalk adjacent to 16th Street in order to return to the vehicle. At that time, all lanes of 16th Street were designated as eastbound lanes. At some point, Brown left the sidewalk and started to walk on 16th Street. As he was walking on 16th Street, he fell and was injured. Indianapolis Metropolitan Police Detective Zachary Olson was assigned to traffic detail at 16th Street and Olin Avenue which included attempting to keep traffic flowing and protecting motorists and pedestrians as they passed through the intersection. Detective Olson walked west on 16th Street from his assigned intersection toward the racetrack advising and motioning for pedestrians to move onto the sidewalk on the north side of 16th Street in order to make room for the traffic flow, and when he was returning to his assigned intersection he encountered Brown on the ground and called for an ambulance.

[3] In his complaint as amended, Brown alleged in part that he inadvertently stepped into a pothole and that his fall and injuries were a result of the

negligence of Indianapolis and Speedway. Speedway and Indianapolis filed motions for summary judgment together with designated evidence, and Brown filed responses and designated evidence. The parties' designated evidence included, among other materials, portions of the deposition testimony of Brown, Brown's wife, and Detective Olson.

[4] During his deposition, Brown testified that the tip of his shoe made contact with the far side of a chuckhole, his toe became hooked, and he fell back. He indicated that he could give an approximate location where he fell but did not believe he would be able to remember the exact location. He indicated he was proceeding eastbound but did not make it as far as "the viaduct on 16th Street." Appellant's Appendix Volume 3 at 45. Brown indicated that no one specifically told him to walk or not to walk on the street. He testified that the chuckhole was perhaps three inches deep and that he did not remember its width. When asked "[t]raffic was using the eastbound lanes, but the westbound lanes where you were was all pedestrians," he replied "[c]orrect." Appellant's Appendix Volume 2 at 109. In her deposition, when asked about the depth of the pothole, Brown's wife answered "[n]ot very deep. It wasn't like that (indicating). It was more, like, little." *Id*. at 67. When asked "[h]ow wide was it," she answered "[n]ot very" and "I didn't spend a whole lot of time looking at it. I don't know." *Id*. When asked if she thought it could damage her car to drive over the pothole, she answered "[n]o. I don't think -- no, it wasn't one of those -- it wasn't a deep one." *Id*.

During his deposition, Detective Olson testified that his traffic detail "usually consists of trying to keep traffic flowing, protecting the safety of motorists and the pedestrians as they pass through the intersection, and assisting people getting to and from the race." *Id.* at 73. When asked if pedestrians walk in the street, Detective Olson answered "[t]hey do," and when asked if he could give a proportion of people he believed were on the sidewalk versus the street, he replied "[w]ell, obviously, it's a lot of factors at play, but the majority of people try to stay on the sidewalk. Sometimes the flow is heavy and there are people in the street. It fluctuates." *Id.* at 115. Detective Olson further testified that he spoke with Brown and observed in Brown what he believed to be signs of intoxication, including glassy and bloodshot eyes and slurred speech. When asked to estimate the number of people "surrounding [him] at that time within let's say 50 yards," Detective Olson answered in part "the best way I could describe it would be is if you were walking through the concourse of a sporting event as it's letting out. I mean the same, more or less, a similar density of people was walking down the sidewalk as would be walking out of an event . . . there's still a lot of people at that point." *Id.* at 116. When asked "[w]ould it be fair to characterize the pedestrian volume as if not shoulder to shoulder, then very close to that," he replied "I would say pretty close." *Id.* Detective Olson indicated that he told pedestrians to move out of the street very frequently, that he was able to give tickets to pedestrians for being in the street, that he had not written any such tickets, that he typically encouraged people to exit the street for their safety, and that writing tickets would take all of his time.

[6] Detective Olson indicated that at some point there were six lanes of traffic all traveling eastbound and that there was never any lane of 16th Street that was specifically closed for pedestrian traffic. When asked "[s]o you had actually proceeded west of [Brown's] location, correct, telling pedestrians to get out of your way," Detective Olson answered "[c]orrect," and when asked "[s]o [Brown] would have passed you" and "at that time, you were telling pedestrians repeatedly get out of the road," he responded affirmatively. *Id*. at 78. When asked "[s]o he would've been one of those pedestrians you were telling [to] get out of the road," Detective Olson replied "I would assume, yes." *Id*.

[7] Speedway designated deposition testimony that there were no prior reports of personal injury or property damage on 16th Street. Speedway, Indianapolis, and Brown designated deposition testimony that, after the race, none of the lanes on 16th Street were designated as pedestrian walking surfaces and all of the lanes were being used for vehicular traffic. Brown and Indianapolis designated portions of the deposition testimony of the Director of Public Works for Speedway, who testified that, in 2014, Indianapolis and Speedway had an agreement related to 16th Street on the south end of the IMS property whereby Indianapolis was responsible for major repairs, replacement, and upgrades and Speedway was responsible for minor maintenance which included pothole patching and some striping and crosswalks. Indianapolis also designated evidence that the area of 16th Street west of Olin Avenue was part of the plan whereby Speedway is responsible for minor repairs of paved areas such as

potholes and that Indianapolis's westernmost boundary on 16th Street is a railroad trestle near Olin Avenue.

[8] In a portion of the Director's deposition designated by Brown, when asked if Speedway inspected the streets which surround the track prior to the Indianapolis 500, the Director replied "[y]es . . . before the mini-marathon at the first of May and we're coming out of winter into spring, we start pothole patching as soon as the asphalt plants open up, so we start running thoroughfares, secondaries, and then spread out to our alleyways." *Id*. at 124. He continued that "[t]hen when we get closer to May, we reinspect all of our mini-marathon routes around the track, 16th, Georgetown, anything that's in our jurisdiction that we have activities and people/fans coming to our events." *Id*. When asked about records of the inspections, the Director replied: "They're not specific to. It will show that we were doing pothole patching, whatever variety of work we were doing that week. It wouldn't be specific to a street or an area that the crews were assigned out to do specific tasks that week and what was accomplished that week." *Id*. Indianapolis designated an affidavit of an administrator in its Department of Public Works stating that Speedway is responsible for minor repairs of paved areas such as potholes, routine maintenance, street cleaning, and weed and grass control on West 16th Street and that Indianapolis is responsible for large-scale projects, capital improvements, major resurfacings, street signage, and traffic signals.

Following a hearing, the trial court entered summary judgment in favor of Indianapolis and Speedway. Brown filed a motion to correct error, and the court denied the motion.

## Discussion

The issue is whether the trial court erred in entering summary judgment in favor of Speedway and Indianapolis or abused its discretion in denying Brown's motion to correct error. When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* Once these requirements are met, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. We will affirm a trial court's grant of summary judgment upon any theory or basis supported by the designated materials. *Id.* We review

the denial of a motion to correct error for an abuse of discretion. *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008), *reh'g denied*.

[11] Brown argues that he can identify what made him fall, i.e. a pothole, although he is unable to identify the precise location of the pothole. He argues that, "[w]hile it may be that a municipality is normally only required to take reasonable steps to keep its roads safe for vehicular traffic, certain instances (such as when a municipality can reasonably expect thousands of people to be exiting a sporting event) call for a jury determination of whether the broad type of plaintiff and the broad type of harm suffered, in light of all of the facts, were foreseeable, giving rise to a duty." Appellant's Brief at 15. Brown further argues that Speedway and Indianapolis had a duty to maintain 16th Street for pedestrian traffic on the day of the race, and that "whether use of the sidewalk along 16th Street right outside of IMS is practicable within an hour or so following the Indianapolis 500, is a question for a jury." *Id*. at 18. He asserts that "a juror could reasonably infer that Speedway had constructive notice of the subject pothole; that in the exercise of ordinary care and diligence it would have discovered this pothole while doing its inspections of the roadways in the days and weeks before the Indianapolis 500." *Id*. at 25.

[12] Speedway maintains that the designated evidence establishes that Brown was contributorily negligent and was in the best position to see if there was a hole in front of him and nevertheless failed to observe where he was walking and stepped into an open hole. It further argues Brown was contributorily negligent *per se* because he was walking in the middle of the street in violation of Ind.

Code § 9-21-17-12, that Brown cannot overcome the presumption of contributory negligence resulting from his violation of the statute, that he would have been one of the pedestrians Detective Olson was instructing to exit the street, and that there is no designated evidence that the sidewalk was not accessible or that Brown was prevented from using it. In addition, Speedway maintains that it had neither actual nor constructive notice of the pothole, that there were no prior reports of a pothole in the area, and that it is mere speculation that a pothole existed when the town made its pre-race inspections. It also argues that it did not owe Brown a duty to maintain the center of 16th Street in a condition safe for pedestrian traffic. Indianapolis argues that it had no duty to repair the pothole which injured Brown and that Brown was contributorily negligent and negligent *per se* as a matter of law.

[13] To prevail on a claim of negligence the plaintiff must show: (1) a duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *Goodwin*, 62 N.E.3d at 386. Whether a duty exists is a question of law for the court to decide. *Id.* at 386-387. A defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim. *Pelak v. Ind. Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*. Negligence cannot be inferred from the mere fact of an accident. *Id.* Rather, all the elements of negligence must be supported by specific facts designated to the trial court or reasonable inferences that might be drawn from those facts. *Id.*

An inference is not reasonable when it rests on no more than speculation or conjecture. *Id.* Where the facts are undisputed and lead to but a single inference or conclusion, the court as a matter of law may determine whether a breach of duty has occurred. *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003), *reh'g denied*.

[14] Governmental entities have a general duty to exercise reasonable care in designing, constructing, and maintaining highways for the safety of public users. *Fulton Cty. Comm'rs v. Miller*, 788 N.E.2d 1284, 1286 (Ind. Ct. App. 2003). Ind. Code § 9-13-2-73 provides: "'Highway' or 'street' means the entire width between the boundary lines of every publicly maintained way when any part of the way is open to the use of the public for purposes of vehicular travel. The term includes an alley in a city or town." The duty of a governmental entity to maintain and repair roads within its control does not attach unless the city has actual or constructive notice of a dangerous situation. *Harkness v. Hall*, 684 N.E.2d 1156, 1161 (Ind. Ct. App. 1997), *trans. denied*. The rule of constructive knowledge applies to defects as might have been discovered by the exercise of ordinary care and diligence. *Id*. It is well settled that the complaining party must not only prove that the alleged defective condition existed, but that the governmental entity "had knowledge thereof, actual or constructive, long enough before the accident to repair the defect, and failed to do so." *Bd. of Comm'rs of Delaware Cty. v. Briggs*, 167 Ind. App. 96, 119-120, 337 N.E.2d 852, 868 (1975), *reh'g denied*.

In most actions for negligence in Indiana, a plaintiff's contributory fault does not bar recovery unless it exceeds fifty percent of the total fault proximately contributing to the damages and otherwise operates only to reduce a plaintiff's damages in proportion to fault. *Funston v. Sch. Town of Munster*, 849 N.E.2d 595, 598 (Ind. 2006) (citing Ind. Code §§ 34-51-2-5, -6). However, the Indiana Comparative Fault Act expressly excludes application to governmental entities, and thus the common law defense of contributory negligence remains applicable for governmental defendants. *Id*. (citing Ind. Code § 34-51-2-2). Therefore, even a slight degree of negligence on the part of Brown, if proximately contributing to his claimed damages, will operate as a total bar to his action against Speedway and Indianapolis. *See id*.

A plaintiff is contributorily negligent when his conduct falls below the standard to which he should conform for his own protection and safety. *Id*. Lack of reasonable care that an ordinary person would exercise in similar circumstances is the factor upon which the presence or absence of negligence depends. *Id*. Where the facts are undisputed and only a single inference can reasonably be drawn therefrom, the question of contributory negligence is one of law. *Id*. (citing *Jones v. Gleim*, 468 N.E.2d 205, 207 (Ind. 1984)).

Further, it must be shown that the plaintiff's negligent act was a proximate cause of his injury and that he was actually aware of or should have appreciated the risks involved. *Jones*, 468 N.E.2d at 207. Indiana courts have found contributory negligence as a matter of law in cases in which the voluntary conduct of the plaintiff exposed him to imminent and obvious dangers which a

reasonable person exercising due care for his own safety would have avoided. *Id*. An act or omission is said to be a proximate cause of an injury if the resulting injury was foreseen, or reasonably should have been foreseen, as the natural and probable consequence of the act or omission. *Funston*, 849 N.E.2d at 600. There can be multiple proximate causes of a resulting event. *Id*. The defense of proximate cause requires only that a plaintiff's negligence be "a" proximate cause, that is, one of the proximate causes. *Id*.

[18] Negligence *per se* is the unexcused or unjustified violation of a duty prescribed by statute where the statute is intended to protect the class of persons in which the plaintiff is included and to protect against the type of harm which has occurred as a result of the violation. *City of Ft. Wayne v. Parrish*, 32 N.E.3d 275, 277 (Ind. Ct. App. 2015), *trans. denied*. Indiana courts have a long and continuous history of recognizing negligence actions for statutory violations. *See Kho v. Pennington*, 875 N.E.2d 208, 212 (Ind. 2007) (plurality opinion) (citing numerous opinions including *Canfield v. Sandock*, 563 N.E.2d 1279, 1283 (Ind. 1990) (violation of statutory duties of pedestrians), *reh'g denied*). Proof of the violation of a safety regulation creates a rebuttable presumption of negligence. *Witham v. Norfolk & W. Ry. Co.*, 561 N.E.2d 484, 485 (Ind. 1990). The presumption may be rebutted by evidence that the person violating the statute did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. *Id*. Ind. Code § 9-21-17-12 provides: "If a sidewalk is provided and the sidewalk's use is practicable, a pedestrian may not walk along and upon an

adjacent roadway." Ind. Code § 9-21-17-13 provides that, "[i]f a sidewalk is not available, a pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway." Ind. Code § 9-13-2-167 provides: "'Sidewalk' means the part of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines intended for the use of pedestrians."

[19] In this case, the designated evidence reveals that Speedway and Indianapolis had an agreement pursuant to which Speedway was responsible for minor maintenance of 16th Street south of the IMS and that this minor maintenance included patching potholes in the roadway. The designated evidence also reveals that there were no prior reports of personal injury or property damage on 16th Street. Brown points to the roadway inspections performed by Speedway prior to the Indianapolis 500; however, the Director of Public Works for Speedway testified that the inspections occurred prior to the mini-marathon at the first of May, and Brown does not point to designated evidence that the inspections revealed the pothole upon which Brown tripped or the extent to which the inspections revealed roadway defects which were not addressed prior to the race. Brown's wife indicated that she did not think the pothole would have caused damage to a vehicle driving over it. The designated evidence demonstrates a prima facie showing of a lack of actual or constructive notice or knowledge of any roadway defect or dangerous condition in the area where Brown fell. The burden then shifted to Brown to specifically designate evidence that Speedway had notice or knowledge of the defect for a sufficient period of

time before the accident to perform any needed patch or repair. *See Briggs*, 337 N.E.2d at 868. An inference is not reasonable when it rests on no more than speculation or conjecture. *See Pelak*, 831 N.E.2d at 769. The fact that Speedway completed the inspections as described in the designated materials, without more, does not reveal that it had constructive knowledge of all possible defects or of a particular defect on 16th Street. Brown has not met his burden of specifically designating evidence of Speedway or Indianapolis's knowledge. Thus, the duty to repair a particular pothole on 16th Street did not attach. *See Harkness*, 684 N.E.2d at 1161. The entry of summary judgment was proper on this basis.

[20] In addition, the designated evidence establishes that Brown left the sidewalk adjacent to 16th Street, entered the roadway, and was walking in the roadway of 16th Street when he fell. Although there may have been a number of people leaving the IMS, the designated evidence establishes that, at the time of Brown's fall, all of the lanes of 16th Street were designated vehicular lanes and that none of the lanes were designated as pedestrian walking surfaces. Detective Olson was directing pedestrians at that time to move to the sidewalk so that the street would be clear for vehicular traffic. The designated materials demonstrate that Brown failed to exercise, for his own safety, that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would have exercised, that his conduct exposed him to a danger which a reasonable person exercising due care for his own safety would have avoided, and that his failure to exercise reasonable care was one of the

proximate causes of his injury. Brown's contributory negligence also supports the entry of summary judgment in favor of Indianapolis and Speedway. *See Funston*, 849 N.E.2d at 598 n.2 ("Under the common law defense of contributory negligence, a plaintiff may not recover if guilty of any negligence, no matter how slight, that proximately contributes to the claimed injury.").

### Conclusion

[21] For the foregoing reasons, we affirm the trial court's entry of summary judgment.

[22] Affirmed.

Altice, J., and Tavitas, J., concur.